## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
:
JOHN F. LAWRENCE,                             :
                                              :     CIVIL ACTION NO:
                           Plaintiff,         :     3:03CV850(JBA)
                                              :     LEAD
        v.                                    :
                                              :
THE RICHMAN GROUP CAPITAL CORPORATION;        :
THE RICHMAN GROUP, INC.; RICHMAN ASSET        :
MANAGEMENT, LLC.; THE RICHMAN GROUP           :
OF NEW YORK LLC; U.S.A. INSTITUTIONAL         :
TAX CREDIT FUND XXVII L.P.; RICHMAN U.S.A. TAX :
CREDIT XXVII L.P.; RICHMAN U.S.A. TAX CREDIT XXVII, :
INC.; U.S.A. INSTITUTIONAL TAX CREDIT FUND    :
XXVIII L.P.; RICHMAN U.S.A. TAX CREDIT XXVIII L.P.; :
RICHMAN U.S.A. TAX CREDIT XXVIII, INC.; U.S.A. :
INSTITUTIONAL TAX CREDIT FUND XXX L.P.; RICHMAN :
U.S.A. TAX CREDIT XXX LLC; U.S.A. INSTITUTIONAL :
TAX CREDIT FUND XXXII L.P.; RICHMAN U.S.A. TAX :
CREDIT XXXII LLC; THE RICHMAN FAMILY          :
IRREVOCABLE GRANTOR TRUST DATED JUNE 1, 2002; :
U.S.A. INSTITUTIONAL TAX CREDIT FUND XXXIV L.P.; :
RICHMAN U.S.A. TAX CREDIT XXXIV LLC; U.S.A.    :
INSTITUTIONAL TAX CREDIT FUND XXXV L.P.;       :
RICHMAN U.S.A. TAX CREDIT XXXV LLC; RICHMAN    :
U.S.A. MANAGER, INC.; U.S.A. INSTITUTIONAL TAX :
CREDIT FUND XXXVI L.P.; U.S.A. INSTITUTIONAL TAX :
CREDIT FUND XXXVIII L.P.; U.S.A./FLEET INSTITUTIONAL: 
TAX CREDIT FUND XX-A L.P.; U.S.A. INSTITUTIONAL TAX:
CREDIT FUND XX-C L.P.;  RICHMAN U.S.A. TAX CREDIT :
XX L.P.; and RICHMAN U.S.A. TAX CREDIT XX, INC., :     MARCH 21, 2005
                                              :
                           Defendants.        :
_____:

## SECOND AMENDED COMPLAINT

Plaintiff John F. Lawrence ("Lawrence") hereby brings his Second Amended Complaint

against Defendants as follows:

PARTIES, JURISDICTION & VENUE

1.      At all relevant times herein, Lawrence was a resident of Maryland.

2.      Upon information and belief, Defendants have their principal place of business in Connecticut.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

4.      Personal jurisdiction over Defendants and venue in this Court are proper both in that a related action, encaptioned John F. Lawrence v. The Richman Group of Connecticut LLC, Civil Action No. 3:03cv850(JBA), was judicially transferred to this Court from the United States District Court, District of Maryland, upon the motion of Defendants' affiliate The Richman Group of Connecticut LLC and also pursuant to 28 U.S.C. §1391(a).


FACTUAL BACKGROUND

5.      Since approximately 1985 through the present, Lawrence has been licensed as a Series 7 General Securities Registered Representative with the National Association of Securities Dealers, Inc. (the "NASD").

6.      Upon information and belief, all Defendants are affiliated entities.

7.      Upon information and belief, since at least 1997 through the present, The Richman Group, Inc. ("TRG, Inc.") and The Richman Group Capital Corporation ("TRG Capital") have been syndicators, directly or through affiliates, primarily of real estate limited partnerships, styled as investment funds (the "TRG Funds"), created as vehicles for investment by institutional investors, among others.

8.      Upon information and belief, since at least 1997 through the present, Richman Asset Management, LLC ("Richman Asset") managed the TRG Funds.

9.      Upon further information and belief, TRG, Inc., TRG Capital, and/or Richman Asset ultimately controlled the TRG Funds vis-à-vis Lawrence's compensation.

10.     Upon information and belief, since at least 1999, The Richman Group of New York LLC ("TRGNY") has been responsible for marketing and investment program development for a group of entities known as the Richman Group of Companies.

11.     Upon information and belief, the TRG Funds are partnerships which offer for sale units of limited partnership interests, including the offering for sale of fractional units.

12.     Upon information and belief, U.S.A./Fleet Institutional Tax Credit Fund XX-A L.P. ("Fund XX-A") is one of the TRG Funds.  Upon further information and belief, Richman U.S.A. Tax Credit XX L.P. ("Richman XX LP") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Fund XX-A.  Upon further information and belief, Richman U.S.A. Tax Credit XX, Inc. ("Richman XX Inc.") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Richman XX LP.  Fund XX-A, Richman XX LP (with respect to Fund XX-A), and Richman XX Inc. (with respect to Fund XX-A) hereinafter are collectively referenced as "TRG XX-A".

13.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XX-C L.P. ("Fund XX-C") is one of the TRG Funds.  Upon further information and belief, Richman XX LP also is the general partner and, vis-à-vis Lawrence's compensation, is in control of Fund XX-C. Fund XX-C, Richman XX LP (with respect to Fund XX-C), and Richman XX Inc. (with respect to Fund XX-C) hereinafter are collectively referenced as "TRG XX-C".

14.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XXVII L.P. ("Fund XXVII") is one of the TRG Funds.  Upon further information and belief, Richman U.S.A. Tax Credit XXVII L.P. ("Richman XXVII LP") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Fund XXVII.  Upon further information and belief, Richman U.S.A. Tax Credit XXVII, Inc. ("Richman XXVII Inc.") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Richman XXVII LP.  Fund XXVII, Richman XXVII LP, and Richman XXVII Inc. hereinafter are collectively referenced as "TRG XXVII".

15.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XXVIII L.P. ("Fund XXVIII") is one of the TRG Funds.  Upon further information and belief, Richman U.S.A. Tax Credit XXVIII L.P. ("Richman XXVIII LP") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Fund XXVIII.  Upon further information and belief, Richman U.S.A. Tax Credit XXVIII, Inc. ("Richman XXVIII Inc.") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Richman XXVIII LP.  Fund XXVIII, Richman XXVIII LP, and Richman XXVIII Inc. (with respect to Fund XXVIII) hereinafter are collectively referenced as "TRG XXVIII".

16.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XXX L.P. ("Fund XXX") is one of the TRG Funds.  Upon further information and belief, Richman U.S.A. Tax Credit XXX LLC ("Richman XXX LLC") is the general partner and, vis-à-vis Lawrence's compensation, is in control of Fund XXX.  Fund XXX and Richman XXX LLC hereinafter are collectively referenced as "TRG XXX".

17.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XXXII L.P. ("Fund XXXII") is one of the TRG Funds.  Upon further information and belief, Richman U.S.A. Tax Credit XXXII LLC ("Richman XXXII LLC") is the general partner and, vis-à-vis

Lawrence's compensation, is in control of Fund XXXII.  Upon further information and belief,
The Richman Family Irrevocable Grantor Trust dated June 1, 2002 (the "Richman Trust") or
Richman XXVIII Inc. was or is the sole managing member and, vis-à-vis Lawrence's
compensation, was or is in control of Richman XXXII LLC.  Fund XXXII, Richman XXXII
LLC, the Richman Trust, and Richman XXVIII Inc. (with respect to Fund XXXII) hereinafter
are collectively referenced as "TRG XXXII".

     18.    Upon information and belief, U.S.A. Institutional Tax Credit Fund XXXIV L.P.
("Fund XXXIV") is one of the TRG Funds.  Upon further information and belief, Richman
U.S.A. Tax Credit XXXIV LLC ("Richman XXXIV LLC") is the general partner and, vis-à-vis
Lawrence's compensation, is in control of Fund XXXIV.  Upon further information and belief,
Richman XXVIII Inc. also is the sole managing member and, vis-à-vis Lawrence's
compensation, is in control of Richman XXXIV LLC.  Fund XXXIV, Richman XXXIV LLC,
and Richman XXVIII Inc. (with respect to Fund XXXIV) hereinafter are collectively referenced
as "TRG XXXIV".

     19.    Upon information and belief, U.S.A. Institutional Tax Credit Fund XXXV L.P.
("Fund XXXV") is one of the TRG Funds.  Upon further information and belief, Richman
U.S.A. Tax Credit XXXV LLC ("Richman XXXV LLC") is the general partner and, vis-à-vis
Lawrence's compensation, is in control of Fund XXXV.  Upon further information and belief,
Richman U.S.A. Manager, Inc. ("Richman Manager") is the sole managing member and, vis-à-
vis Lawrence's compensation, is in control of Richman XXXV LLC.  Fund XXXV, Richman
XXXV LLC, and Richman Manager hereinafter are collectively referenced as "TRG XXXV".

     20.    Upon information and belief, U.S.A. Institutional Tax Credit Fund XXXVI L.P.
("Fund XXXVI") is one of the TRG Funds.

21.     Upon information and belief, U.S.A. Institutional Tax Credit Fund XXXVIII L.P. ("Fund XXXVIII") is one of the TRG Funds.

22.     In approximately late 1997 or early 1998, Lawrence approached TRG, Inc. and TRG Capital with an investment fund concept that would enable institutional banking investors to invest in affordable housing located in specifically targeted geographic areas (the "Bank Fund").

23.     In general, the Bank Fund offered such banking institutions the opportunity to better meet the credit and housing needs of the communities in which the banking institutions operated, as provided in the federal Community Reinvestment Act (the "CRA"), while at the same time taking advantage of the Federal Low Income Housing Tax Credit (the "LIHTC").

24.     The Bank Fund concept was novel to TRG, Inc. and TRG Capital in its focus on regional investments rather than national investments; as of the late 1997 and early 1998, the nature of national real estate limited partnerships did not commonly afford banking institutions the opportunity to invest in their communities so as to more readily comply with the CRA and receive the LIHTC tax benefit.

25.     Upon information and belief, in their dealings with Lawrence from approximately late 1997 or early 1998, through the present, Defendants and Defendants' affiliate broker-dealer Wilder Richman Securities Corporation ("WRSC") acted through, among others, Stephen B. Smith ("Smith"), Richard Paul Richman ("Richman"), and David A. Salzman ("Salzman").

26.     Upon information and belief, Smith is or was (i) Executive Vice President of TRG, Inc., TRG Capital, and most defendant TRG Funds, and (ii) Executive Vice President and a principal of WRSC.

27.     Upon information and belief, Richman is or was (i) either Chairman of the Board and/or President of TRG, Inc., TRG Capital, and all defendant TRG Funds, (ii) President and a principal of WRSC, and (iii) majority owner of all Defendants other than the TRG Funds themselves.

28.     Upon information and belief, Salzman is or was (i) Executive Vice President, President, Assistant Secretary and/or the managing officer of all Defendants, and (ii) Vice President of WRSC.

29.     Upon information and belief, in Richman's dealings with Lawrence from approximately late 1997 or early 1998 through the present, Richman acted on behalf of Defendants and WRSC, among others.

30.     Upon information and belief, in Smith's dealings with Lawrence from approximately late 1997 or early 1998 through the present, Smith acted on behalf of Defendants and WRSC, among others.

31.     Upon information and belief, in Salzman's dealings with Lawrence from approximately late 1997 or early 1998 through the present, Salzman acted on behalf of Defendants and WRSC, among others.

32.     Upon information and belief, Smith and/or Richman are responsible for verifying that all brokers with which Defendants enter into selling agreements are properly licensed and registered in accordance with all applicable federal and state laws.

33.     Upon information and belief, Smith and/or Richman are responsible for ensuring that all Defendants' employees are properly licensed and registered in accordance with all applicable federal and state laws.

34.     Upon information and belief, from approximately late 1997 or early 1998 through the present, Smith was and continues to be responsible for marketing and investment program development for Defendants from offices in Arlington, Virginia.

35.     Upon information and belief, from approximately late 1997 or early 1998 through the present, Smith was and continues to be responsible for Defendants entering into and complying with any selling agreements with third party broker/dealers.

36.     In approximately late 1997 or early 1998, in response to Lawrence's above-described Bank Fund proposal, Smith stated to Lawrence that TRG, Inc. and/or TRG Capital would syndicate the Bank Fund if Lawrence could introduce institutional banking investors willing to invest an aggregate of not less than twenty million dollars ($20,000,000) to forty million dollars ($40,000,000).  Smith further stated to Lawrence that, if Lawrence were successful in securing the requisite interest, Lawrence would have the exclusive right to market to institutional banking investors nationwide the TRG Funds, including the Bank Fund.

37.     Smith made the aforesaid statements with the intent and/or knowledge that Lawrence would rely on such statements and that in reliance on those statements Lawrence would market the TRG Funds to institutional banking investors.

38.     In reliance on Smith's statements as aforesaid, and entirely on his own time and at his own expense, for over one (1) year Lawrence prospected and cultivated business relationships with institutional banking investors throughout the United States, including, but not limited to, building a database of every national banking institution and bank holding company in the United States, contacting the Federal Deposit Insurance Corporation regarding the applicability of the CRA to the Bank Fund, cold-calling over one hundred (100) national banking

institutions, and organizing a series of investor conferences and meetings between the institutional banking investors and Defendants' representatives.

39.     The banking institutions solicited by Lawrence generally were receptive to this new opportunity, and, after input from certain of these banking institutions, the Bank Fund concept was further refined, narrowing each investment fund to a specific property within a certain geographic region.

40.     As a result of Lawrence's efforts, as aforesaid, Lawrence introduced to Defendants institutional banking investors that, in the aggregate, expressed sufficient interest in the Bank Fund.

41.     Prior to Lawrence's efforts as aforesaid, Defendants did not have any significant number of institutional banking investors as clients.

42.     While marketing the Bank Fund, Lawrence learned from an institutional banking investor (i) that Beacon Hill Capital Corporation ("Beacon Hill"), a third-party broker/dealer with which one or more Defendants had an agreement to sell Defendants' products, already had contacted that investor and other institutional banking investors about investing in the Bank Fund and (ii) that Beacon Hill had sent out investment summaries to certain institutional banking investors through Defendants' Arlington, Virginia office.

43.     As a result thereof, Smith and Lawrence created a "Registered Client" list wherein the institutional banking investors that Lawrence contacted regarding investing in the Bank Fund were listed as Lawrence's clients.

44.     The purpose of this registration process was to identify those institutional banking investors as to which Lawrence had the exclusive or nonexclusive right to introduce any TRG

Funds, including the Bank Fund, and the right to receive certain compensation for any resulting investment in any of the TRG Funds by those institutional banking investors.

45.     The "Registered Client" list was a base list to which Lawrence could add other clients as he prospected new banks for investments into the TRG Funds.

46.     Approximately ninety-five (95) institutional banking investors ultimately were included on Lawrence's "Registered Client" list (the "Lawrence Registered Clients").

47.     Upon information and belief, prior to the creation of Lawrence's "Registered Client" list, none of the Lawrence Registered Clients had invested in any TRG Funds.

48.     In light of the circumstances and developments as aforesaid, beginning in approximately August 1998 through early 1999, Lawrence and Smith exchanged more specific communications with respect to the terms and conditions which would govern Defendants' syndication, directly or indirectly, of the Bank Fund and Lawrence's compensation.

49.     Smith requested and Lawrence agreed that Lawrence would perform services exclusively for Defendants as opposed to any syndicator not affiliated with Defendants and that he would not introduce any institutional banking investors to any such other syndicator, and, in fact, Lawrence thereafter until he transferred his NASD Form U-4 from WRSC performed services exclusively for Defendants rather than any such other syndicator and did not introduce any institutional banking investors to any such other syndicator.

50.     Between August 1998 and early 1999, Smith stated to Lawrence that Lawrence would have the exclusive right to solicit the Lawrence Registered Clients to invest in the TRG Funds, with the exception of Comerica and U.S. Bancorp which also could be solicited by Beacon Hill.

51.     Smith requested and Lawrence agreed that Lawrence would not solicit any additional institutional banking investors from the State of California, and, in fact, Lawrence thereafter did not solicit any additional institutional banking investors from the State of California except upon request of Defendants and then only as to specific investment opportunities.

52.     Smith stated that Lawrence would receive compensation in the amount of twelve thousand five hundred dollars ($12,500) for each one million dollar ($1,000,000) limited partnership unit of the Bank Fund sold to the Lawrence Registered Clients, without reduction for volume or repeat investors, with the successive Bank Fund investment funds ultimately designated by Defendants as XX-A, XX-B, XX-C, and so on.

53.     Upon information and belief, from early 1999 to the date hereof, Defendants have had closings within at least nine (9) Bank Fund investment funds designated as XVII and XX-A through XX-H.

54.     Smith stated that Lawrence would receive compensation in the amount of seven thousand five hundred dollars ($7,500) for each one million dollar ($1,000,000) limited partnership unit of any TRG Fund other than the Bank Fund sold to the Lawrence Registered Clients, without reduction for volume or repeat investors, with the successive TRG Funds ultimately designated by Defendants as XXI, XXII, XXIII, and so on.

55.     Upon information and belief, from early 1999 to the date hereof, Defendants have had closings within at least eighteen (18) other TRG Funds designated as XVIII and XXI through XXXVIII.

56.     Smith stated that Lawrence would be compensated as aforesaid for thirty-six (36) months for each of the Lawrence Registered Clients calculated from the respective time of each such client's first investment in any TRG Funds.

57.     Smith stated that Lawrence would continue to be compensated after the aforesaid 36-month period as long as the investing Lawrence Registered Client paid a commission fee , that Lawrence's compensation would be equal to the collected commission fee, that the commission fee stated in the applicable private placement memorandum would not be below the then market rate for such commissions, that Defendants would not initiate or encourage negotiated commission fees with the Lawrence Registered Clients, that Defendants would use "reasonable efforts" to talk any such investor out of insisting on lower sales commissions, and that such sales commissions would not be lowered without Lawrence's prior approval.

58.     On any investment in any TRG Funds made by Comerica or U.S. Bancorp during the aforesaid initial 36-month period, Smith stated that Lawrence would be compensated eight thousand seven hundred fifty dollars ($8,750) for each one million dollar ($1,000,000) limited partnership unit sold.

59.     As a result of subsequent mergers between certain Lawrence Registered Clients and certain Beacon Hill clients, Smith stated that Lawrence's compensation would be equal to the compensation paid to Beacon Hill on any investment in any TRG Funds by either of the merged entities referred to as Wells Fargo/Norwest and Crestar/Suntrust.

60.     Upon information and belief, the above-described communications occurred both orally and in writing.

61.     In reliance on Smith's statements as aforesaid, Lawrence did not pursue opportunities to develop and market competing investment products with other syndicators.

62.     Upon information and belief, as of December 31, 2003, the Lawrence Registered Clients, in the aggregate, had purchased hundreds of one million dollar ($1,000,000) limited partnership units of TRG Funds, representing hundreds of millions of dollars in limited partnership interests.

63.     Upon information and belief, Freddie Mac had, and continues to have, a formal or informal understanding or practice with Defendants that Freddie Mac may invest a certain percentage of any multi-investor TRG Fund; accordingly, the greater the dollar investments from other investors, including the Lawrence Registered Clients, the greater the dollar amount which Freddie Mac also may invest.

64.     Upon information and belief, Defendants are paid certain investment fund fees, including fees calculated as a percentage of the applicable fund, which are dependent, either directly or indirectly, upon the dollar amount invested in the applicable fund; accordingly, the greater the dollar investments, including from the Lawrence Registered Clients, the greater the fees paid to Defendants.

65.     Upon further information and belief, as of  December 31, 2003, Defendants, in the aggregate, had been paid millions of dollars, and as much as tens of millions of dollars, in acquisition, financing and other upfront fees deriving directly or indirectly from the aforesaid investments by the Lawrence Registered Clients and Freddie Mac, and Defendants, in the aggregate, reasonably expect to be paid thereafter with respect to same millions of dollars more, and as much as tens of millions of dollars more, in administration, property disposal, asset management, and other non-upfront fees.

66.     Since in or about 1992, Lawrence has had his principal place of business only in Maryland.

67.     Lawrence has never maintained an office in Connecticut.

68.     All correspondence to Lawrence from Smith identified Smith's office as located in Virginia.

69.     Lawrence's primary contact with Defendants and WRSC was Smith at his office in Virginia.

70.     Smith and Lawrence communicated by telephone and e-mail from their respective offices in Virginia and Maryland.

71.     Lawrence did not enter into any contract with any Defendant or WRSC which, by its terms, was to be performed in Connecticut.

72.     Lawrence conducted business and performed his responsibilities for Defendants and WRSC primarily from his office in Maryland.

73.     Lawrence was not a signatory to any contracts that Defendants entered with any of the Lawrence Registered Clients.

74.     Lawrence had no authority to contractually bind any Defendant or WRSC with any entity, including the Lawrence Registered Clients.

75.     Lawrence never collected any funds from any of the Lawrence Registered Clients.

76.     Lawrence was neither employed by, nor held any office with, any Defendant.

77.     Lawrence rarely attended meetings in Connecticut and did so only to assist Defendants or their affiliates in presenting information to potential investors.

78.     Lawrence did not have authority at any of the meetings in Connecticut to offer or accept any investment terms on behalf of any Defendant or WRSC.

79.     From 1998 through 2001, the vast majority of the compensation payments made to Lawrence were paid directly by the respective TRG Funds.

80.     From 1998 through 2001, the TRG Funds which compensated Lawrence as aforesaid also issued Lawrence tax Form 1099's.

81.     All payments made by Defendants or their affiliates to Lawrence were sent to Lawrence in Maryland.

82.     All files and documents generated or received by Lawrence during Lawrence's performance of his responsibilities for Defendants and WRSC have been maintained by Lawrence in Maryland.

83.     Upon information and belief, none of the Lawrence Registered Clients which invested in any TRG Fund as to which Lawrence claims additional compensation is due him have their principal place of business in Connecticut.

84.     At all relevant times herein through approximately February 10, 2003, Lawrence's NASD Form U-4 was filed with the NASD through WRSC.

85.     Upon information and belief, at all relevant times, WRSC only performed broker-dealer functions on behalf of the Richman Group of Companies, including but not limited to Defendants and Defendants' affiliate The Richman Group of Connecticut, LLC ("TRGCT").

86.     Upon information and belief, at all relevant times, WRSC, on the one hand, and Defendants and TRGCT, on the other hand, had certain officers and/or directors in common (including Smith) or otherwise were controlled (directly or indirectly) by common persons, and the ownership (direct or indirect) of WRSC, TRGCT and the non-TRG Fund Defendants also was common, upon further information and belief, in at least Richman.

87.     The written communications from Smith to Lawrence generally exhibited TRGCT or TRG Capital letterhead or email addresses, although the title often used by Smith in such communications was "Executive Vice President, The Richman Group of Companies".

15

88.     Upon information and belief, TRGCT email addresses were used by Smith and other representatives of Defendants, TRGCT and WRSC without regard to the particular entity(ies) on whose behalf they held positions or were acting.

89.     Upon information and belief, TRGCT and TRG Capital letterhead were used by Smith and other representatives of Defendants, TRGCT and WRSC without regard to the particular entity(ies) on whose behalf they held positions or were acting.

90.     On various dates prior hereto, representatives of Defendants, TRGCT and WRSC have stated that Lawrence's activities were undertaken by Lawrence as WRSC's agent, including, but not limited to, Defendants' and WRSC's statement of February 22, 2005 that "whatever [Lawrence] did, he did as an agent of [WRSC]" and that WRSC acted with the understanding that "[Lawrence] was representing [WRSC]."

91.     On various dates prior hereto, Defendants and TRGCT have stated that much of the correspondence exchanged with Lawrence did not constitute a communication with Defendants or TRGCT despite letterhead and email addresses indicating otherwise, including, but not limited to, Defendants' statements contained in (i) correspondence with enclosures dated January 18, 2005 and February 11, 2005 signed on behalf of Attorney Robert W. Turken, counsel for Defendants, TRGCT and WRSC, and (ii) TRGCT's sworn interrogatory response dated July 16, 2004 but executed on November 16, 2004 by Salzman as President of TRGCT that "None of the documents produced to [Lawrence] constitutes a communication between [TRGCT] and [Lawrence]."

92.     Upon information and belief, including but not limited to (i) the above-described statements by Defendants, TRGCT and WRSC and (ii) the fact that Lawrence's NASD Form U-4 was filed with the NASD through WRSC, WRSC was obligated through February 10, 2003 to

supervise Lawrence's activities as such activities related to investments in the TRG Funds and to record the subject transactions on WRSC's books and records.

93.     At all relevant times herein, Lawrence acted in good faith belief that WRSC was satisfying its NASD supervisory and recordkeeping obligations.

94.     Upon information and belief, including but not limited to the above-described statements by Defendants, TRGCT and WRSC, and regardless of the precise letterhead or email addresses reflected on same, the written correspondence Lawrence exchanged with Defendants' and TRGCT's natural representatives (including Smith) also were sent or received by such persons as a common representative of WRSC to the extent necessary for WRSC to fulfill its NASD supervisory and recordkeeping obligations.

95.     Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Lawrence provided WRSC written notice describing in detail the proposed transaction and Lawrence's proposed role therein.

96.     Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Lawrence provided WRSC written notice that Lawrence received or may receive compensation in connection with the transaction.

97.     Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private

securities transaction, WRSC advised Lawrence in writing that WRSC approved Lawrence's activities as aforesaid.

98.     Beginning on or about February 10, 2003, Lawrence transferred his NASD Form U-4 to Empire Financial Group, Inc. ("Empire") from WRSC.

99.     For each transaction after February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Lawrence provided Empire written notice describing in detail the proposed transaction and Lawrence's proposed role therein and written notice that Lawrence received or may receive compensation in connection with the transaction.

100.    For each transaction after February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Empire advised Lawrence in writing that Empire approved Lawrence's activities as aforesaid.

101.    Upon information and belief, including but not limited to the foregoing information, Defendants, TRGCT and WRSC had actual knowledge of Lawrence's activities with respect to the TRG Funds as aforesaid.

102.    None of Defendants, TRGCT or WRSC ever advised Lawrence prior to the institution of this action that they believed any of Lawrence's activities violated any provision of the federal Securities and Exchange Act or any rule or regulation thereunder.

103.    For each transaction as to which Lawrence claims compensation is due him from Defendants, the amounts due Lawrence arose through Lawrence acting in good faith for value and without actual knowledge of any violation of the federal Securities and Exchange Act or any rule or regulation thereunder affecting the legality of such debt or obligation.

104.     Upon information and belief, in January 2001, William W. Traylor ("Traylor") was hired by one or more Defendants.

105.     Upon information and belief, from January 2001 until March 2003, Traylor held the positions of President of TRGNY and Vice President of TRG, Inc. and TRG Capital.

106.     Upon information and belief, in those various capacities, Traylor was responsible for managing Defendants' New York office and assisted in marketing and investment program development for Defendants.

107.     Upon information and belief, Traylor's responsibilities also included the solicitation of investors for the TRG Funds.

108.     Upon information and belief, with Defendants' knowledge, consent and/or instruction but without Lawrence's prior knowledge or consent, Traylor solicited certain of the Lawrence Registered Clients to invest in TRG Funds.

109.     Defendants did not inform Lawrence that Traylor was hired to assist in marketing and investment program development for Defendants.

110.     In early 2001, Lawrence discovered that Traylor had had communications with certain of the Lawrence Registered Clients, and in response to Lawrence's subsequent inquiries with respect to same, Smith falsely denied that Traylor was or would be soliciting any Lawrence Registered Clients for investment in any TRG Funds and further failed to inform Lawrence that Defendants intended to assert Traylor's involvement as a basis for denying Lawrence any compensation otherwise due to Lawrence.

111.     From early 2001 through November 2002, Smith and Richman maintained that Traylor was not soliciting, and would not solicit, the Lawrence Registered Clients and that Defendants would not compete with Lawrence in Lawrence's efforts.

112.    From early 1997 through November 2002, Smith and Richman represented that Defendants and their affiliates would support Lawrence in his efforts.

113.    Upon information and belief, as part of Traylor's aforesaid solicitations of certain of the Lawrence Registered Clients, certain commission fees, either as stated in the applicable TRG Fund private placement memorandum or as actually collected, were reduced or eliminated in their entirety from the amount which otherwise would have been stated or collected absent the involvement of Traylor, were paid to Traylor (designated as salary, bonuses or otherwise) instead of Lawrence, and, on at least one occasion, commission fees were returned to the Lawrence Registered Client after the commission fees already had been collected which otherwise would have been retained absent the involvement of Traylor, all without Lawrence's prior knowledge or consent.

114.    Upon information and belief, the aforesaid reduction, elimination or return of commission fees to the Lawrence Registered Clients made investing in the TRG Funds more attractive to the Lawrence Registered Clients, and, upon further information and belief, Defendants benefited therefrom.

115.    Upon information and belief, Traylor was paid and continues to be paid certain compensation which was and is dependent, directly or indirectly, upon the sale to Lawrence Registered Clients of limited partnership interests in the TRG Funds, which compensation, upon further information and belief, takes various forms, including bonuses, not disclosed as sales incentive to Lawrence or to the Lawrence Registered Clients.

116.    Traylor's solicitations of certain of the Lawrence Registered Clients were concealed from Lawrence.

117.    Upon information and belief, the sale of limited partnership interests in TRG Funds to certain of the Lawrence Registered Clients and the negotiation of certain sales commissions, including as to investments solicited by Traylor, were concealed from Lawrence.

118.    Upon information and belief, during the time Traylor solicited certain of Lawrence Registered Clients and sold limited partnership interests in TRG Funds to certain of the Lawrence Registered Clients, Traylor was neither licensed nor registered in accordance with all applicable federal and state laws to solicit the Lawrence Registered Clients for such investment opportunities.

119.    Upon information and belief, none of TRG, Inc., TRG Capital or TRGNY were registered as brokers in accordance with all applicable federal and state laws to solicit the Lawrence Registered Clients for investments in TRG Funds.

120.    Upon information and belief, from 1997 to the present, Defendants had agreements in place and entered into new agreements with certain third party brokers to solicit investments in the TRG Funds from institutional banking investors, including the Lawrence Registered Clients.

121.    Upon further information and belief, certain of these third party brokers were neither licensed nor registered in accordance with all applicable federal and state laws to solicit such investments.

122.    Upon further information and belief, Defendants did not disclose to the Lawrence Registered Clients the lack of proper licensing and/or registration of Defendants, Defendants' employees (including Traylor), and Defendants' third party brokers as aforesaid.

123.    Upon information and belief, with Defendants' knowledge, consent and/or instruction but without Lawrence's prior knowledge or consent, certain of Defendants' third party brokers solicited certain of the Lawrence Registered Clients to invest in TRG Funds.

124.    Upon information and belief, with Defendants' knowledge, consent and/or instruction but without Lawrence's prior knowledge or consent, such third party brokers were compensated by Defendants for investments made by the Lawrence Registered Clients into TRG Funds, including, at times, without regard to the actual commission fees collected from the Lawrence Registered Clients.

125.    Lawrence Registered Clients have paid Defendants certain amounts specifically designated as commission fees.

126.    Upon information and belief, the commission fees paid by Lawrence Registered Clients are separate fees negotiated by Defendants with, and collected by Defendants from, the Lawrence Registered Clients, and are fees to be paid to Lawrence.

127.    Upon information and belief, commission fees are not collected by Defendants from the Lawrence Registered Clients unless a broker is to be paid for the investment made by such investor.

128.    Upon information and belief, in each instance in which Defendants collected commission fees from the Lawrence Registered Clients, Defendants expressly or impliedly represented to the Lawrence Registered Clients that said commission fees were being charged because a broker was entitled to same.

129.    Upon information and belief, certain compensation unpaid and due from Defendants to Lawrence for investments in TRG Funds by the Lawrence Registered Clients is

comprised, in whole or in part, of specifically designated commission fees paid to Defendants by Lawrence Registered Clients.

130.    Such commission fees have been specifically designated and set aside, physically and/or for accounting purposes, by Defendants, but despite demand, Defendants have failed and refused to pay Lawrence said commission fees.

131.    Defendants also have asserted the involvement of Traylor and certain other broker/dealers as aforesaid as a basis for refusing to pay Lawrence certain compensation which otherwise would be due to Lawrence.

132.    Through Bank Fund XX-H and TRG Fund XXXVIII, Lawrence has not been fully compensated, and Defendants have failed to fully act, in accordance with the statements of Smith as set forth above, despite demand.

<u>COUNT I (Breach of Contract)</u>

133.    Lawrence hereby incorporates Paragraphs 1 through 132 as if fully set forth herein.

134.    The communications as aforesaid, both oral and written, constituted one or more contracts between TRG, Inc., TRG Capital, and Funds XX-A, XX-C, XXVII, XXVIII, XXX, XXXII, XXXIV, XXXV, XXXVI and XXXVIII (as to the respective investments by the Lawrence Registered Clients in each such fund) (collectively, the "Contract Defendants") and WRSC, on the one hand, and Lawrence, on the other hand.

135.    An implied term of the contract(s) was that, as to the Lawrence Registered Clients, the contract(s) was terminable only for cause.

136.    The Contract Defendants' conduct as aforesaid breached the aforesaid contract(s) with Lawrence.

137.    As a result of the Contract Defendants' breach of contract as aforesaid, Lawrence has suffered damages, for which damages the Contract Defendants are liable to Lawrence.

### COUNT II (Breach of the Implied Covenant of Good Faith and Fair Dealing)

138.    Lawrence hereby incorporates Paragraphs 1 through 137 as if fully set forth herein.

139.    As part of the Contract Defendants' contractual relationship with Lawrence as aforesaid, said Defendants impliedly covenanted and agreed that they would act in good faith and deal fairly at all times with Lawrence with respect to the subject matter thereof.

140.    Upon information and belief, the Contract Defendants acted in bad faith or with a dishonest purpose by using their discretion to divert certain Lawrence Registered Clients to TRG Funds as to which the Contract Defendants would owe Lawrence lower compensation.

141.    Upon information and belief, the Contract Defendants acted in bad faith or with a dishonest purpose by competing directly with Lawrence by contracting with or otherwise employing unlicensed and nonregistered individuals to solicit the Lawrence Registered Clients.

142.    Upon information and belief, the Contract Defendants acted in bad faith and with a dishonest purpose by not keeping Lawrence informed of investment opportunities which he could present to the Lawrence Registered Clients and by instead providing information regarding investment opportunities to Traylor and third party brokers so as to give Traylor and such third party brokers an opportunity to solicit the Lawrence Registered Clients with respect to same.

143.    Upon information and belief, the Contract Defendants acted as aforesaid so as to solidify their own relationship with the Lawrence Registered Clients and to maintain existing relationships with other third party brokers.

144.    Upon information and belief, the Contract Defendants acted as aforesaid because, in their opinion, they already had exploited Lawrence's usefulness and no longer wanted to include Lawrence in their business or to continue to compensate Lawrence.

145.    The Contract Defendants' bad faith conduct as aforesaid breached the implied covenant of good faith and fair dealing contained within the aforesaid contract(s) with Lawrence.

146.    As a result of the Contract Defendants' breach of the covenant of good faith and fair dealing as aforesaid, Lawrence has suffered damages, for which damages the Contract Defendants are liable to Lawrence.

## COUNT III (Conversion)

147.    Lawrence hereby incorporates Paragraphs 1 through 137 as if fully set forth herein.

148.    TRG XX-A, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by TRG XX-A from the Lawrence Registered Clients, the amount of which is at a minimum $45,082, with the intent of depriving Lawrence of same.

149.    TRG XX-C, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by TRG XX-C from the Lawrence Registered Clients, the amount of which is at a minimum $19,548, with the intent of depriving Lawrence of same.

150.    TRG XXVII, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand,

to pay Lawrence the commission fees collected by TRG XXVII from the Lawrence Registered Clients, including by returning a portion of same to the Lawrence Registered Clients, the amount of which is at a minimum $157,792, with the intent of depriving Lawrence of same.

151.    TRG XXVIII, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by TRG XXVIII from the Lawrence Registered Clients, the amount of which is at a minimum $144,787, with the intent of depriving Lawrence of same.

152.    TRG XXXIV, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by TRG XXXIV from the Lawrence Registered Clients, the amount of which is at a minimum $135,726, with the intent of depriving Lawrence of same.

153.    TRG XXXV, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by TRG XXXV from the Lawrence Registered Clients, the amount of which is at a minimum $73,101, with the intent of depriving Lawrence of same.

154.    Fund XXXVI, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by Fund XXXVI from the Lawrence Registered Clients, the amount of which is at a minimum $173,913, with the intent of depriving Lawrence of same.

155.    Fund XXXVIII, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence the commission fees collected by Fund XXXVIII from the Lawrence Registered Clients, the amount of which is at a minimum $135,000, with the intent of depriving Lawrence of same.

156.    Upon information and belief, as the ultimate controlling parties, TRG, Inc., TRG Capital and/or Richman Asset actively participated in, or otherwise are responsible for, the conduct of TRG XX-A, TRG XX-C, TRG XXVII, TRG XXVIII, TRG XXX, TRG XXXII, TRG XXXIV, TRG XXXV, Fund XXXVI and Fund XXXVIII as aforesaid.

157.    Upon information and belief, one or more of Defendants, without authorization, assumed and exercised the right of ownership over Lawrence's property, to the exclusion of his rights, by failing and refusing, despite demand, to pay Lawrence all other commission fees collected by any Defendant and/or by any non-defendant TRG Fund from the Lawrence Registered Clients, with the intent of depriving Lawrence of same.

158.    Defendants' conduct as aforesaid, other than that of TRGNY, constitutes conversion.

159.    As a result of Defendants' conversion as aforesaid, Lawrence has suffered damages, for which damages Defendants are liable to Lawrence.

### COUNT IV (Statutory Theft, Conn. Gen. Stat. § 52-564)

160.    Lawrence hereby incorporates Paragraphs 1 through 137 and 148 through 159 as if fully set forth herein.

161.    Defendants' conduct as aforesaid, other than that of TRGNY, constitutes statutory theft under Conn. Gen. Stat. § 52-564.

162.    As a result of Defendants' statutory theft as aforesaid, Lawrence has suffered damages, for which damages trebled Defendants are liable to Lawrence.


## COUNT V (Unjust Enrichment)

163.    Lawrence hereby incorporates Paragraphs 1 through 132, 148 through 159, and 161 through 162 as if fully set forth herein.

164.    Upon information and belief, Defendants were benefitted and unjustly did not pay Lawrence for the benefits, all to Lawrence's detriment.

165.    As a result of Defendants' unjust enrichment as aforesaid, Lawrence has suffered damages, for which damages Defendants are liable to Lawrence.


## COUNT VI (Unfair Trade Practices, Conn. Gen. Stat. §§ 42-110a et seq.)

166.    Lawrence hereby incorporates Paragraphs 1 through 165 as if fully set forth herein.

167.    Defendants' conduct as aforesaid offends public policy.

168.    Defendants' conduct as aforesaid is immoral, unethical, oppressive or unscrupulous.

169.    Defendants' conduct as aforesaid has caused Lawrence substantial injury.

170.    Defendants' misrepresentations and omissions to Lawrence as aforesaid were likely to mislead Lawrence, were relied upon by Lawrence, and were material.

171.    Defendants' misrepresentations and omissions to the Lawrence Registered Clients as aforesaid were likely to mislead the Lawrence Registered Clients, were relied upon by the Lawrence Registered Clients upon information and belief, and were material.

172.    Defendants' conduct as aforesaid constitutes unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of Defendants' trade or commerce.

173.    Each of Defendants' various conduct as aforesaid, separately and/or collectively, violates the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq. ("CUTPA").

174.    As a result of Defendants' violation of CUTPA as aforesaid, Lawrence has suffered damages, for which damages Defendants are liable to Lawrence.

WHEREFORE, Lawrence prays for the following relief:

1.      Compensatory damages.

2.      Treble damages pursuant to Count IV.

2.      Punitive damages.

3.      An award in the amount of any unjust enrichment received by Defendants.

4.      Prejudgment interest from and after November 1, 2002.

5.      Attorneys' fees.

6.      Costs.

7.      Such other and further legal or equitable relief as this Court deems just and proper.


**TRIAL BY JURY DEMANDED.**



PLAINTIFF JOHN F. LAWRENCE
By His Attorneys


By:     */s/Brian P. Daniels*_____
        Brian P. Daniels (ct11863)
        BRENNER, SALTZMAN & WALLMAN LLP
        271 Whitney Avenue
        New Haven, CT  06511
        Tel. (203) 772-2600
        Fax. (203) 562-2098
        E-mail: bpdaniels@bswlaw.com

        Ruth Ann Azeredo (ct25537)
        12618 Knowledge Lane
        Bowie, MD 20715
        Tel. (301) 805-4748
        Email:  ruthazeredo@comcast.net

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served via U.S. first

class mail this 21st day of March, 2005, upon:


Richard Slavin, Esq.
David A. Ball, Esq.
Stuart M. Katz, Esq.
Cohen and Wolf P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601-1821

Robert Turken, Esq.
Bitzin Sumberg Dunn Baena Price & Axelrod
200 South Biscayne Boulevard
Suit 2500
Miami, FL  33131.


/s/Brian P. Daniels
Brian P. Daniels (ct11863)

959228.doc