```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

John F. Lawrence                :
                                :
v.                              :       3:03cv850 (JBA)
                                :       LEAD
                                :
                                :
The Richman Group Capital       :
Corp. et al.                    :
```

**Ruling on Motion for Reconsideration [Doc. # 193]**

On March 4, 2005, this Court granted defendants' Motion to Dismiss as to Counts I, II, III, IV, and VI of plaintiff's Amended Complaint, concluding that plaintiff had alleged an illegal contract with defendants. Plaintiff's counsel insisted at oral argument, however, that notwithstanding the plaintiff's allegations in his complaints in the related '850 and '538 actions, in fact plaintiff had received express written consent from Wilder Richman to engage in private securities transactions, which would render the contracts with defendants legal under NASD Rule 3040. Based on counsel's representations, the Court gave plaintiff leave to amend his complaint, and stated that it would reconsider its decision if "plaintiff amends his complaint such that those allegations now precluding application of NASD Rule 3040 are modified, and plaintiffs' amended allegations are in accordance with the [Court's] construction of NASD Rule 3040. That is, to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction <u>expressly</u> to Wilder

1

Richman, and must have received express written consent from Wilder Richman." March 4, 2005 Ruling [Doc. # ] at 23.

On March 21, 2005, plaintiff filed a Second Amended Complaint purporting to comply with the Court's requirements, and moved for reconsideration of the March 4 ruling on defendants' motion to dismiss on the basis of the Second Amended Complaint and on grounds that defendants lacked standing to raise an illegal contract defense.

### A.  Private Right of Action

Plaintiff's contentions that defendants lack standing to raise their illegal contract defense (1) because 15 U.S.C. § 78o(a)(1) and NASD Rule 3040 do not provide a private cause of action, and (2) because defendants are not "unwilling innocent parties," are raised for the first time on reconsideration. The Court finds no merit to these new theories.

As Lawrence appears to acknowledge in arguing in the alternative that only innocent parties may void an illegal contract, the Supreme Court has recognized an implied private cause of action where a contract is void under Section 29(b) of the Securities and Exchange Act, 15 U.S.C. §78cc(b). In <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375 (1970), the Supreme Court stated that Section 29(b), which provides that contracts made or performed in violation of any provision of the Securities and Exchange Act or any rule of regulation thereunder "shall be

void," "establishes that the guilty party is precluded from enforcing the contract against an unwilling innocent party, but it does not compel the conclusion that the contract is a nullity, creating no enforceable rights even in a party innocent of the violation."  Id. at 387.  While Mills did not address the precise issue in this case, it necessarily presumed an implied private right of action to void a contract made in violation of SEC rules.  Subsequently, in Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11 (1979), the Supreme Court found an implied private right of action under Section 215(b) of the Investment Advisers Act,[1] which parallels Section 29(b) of the Securities and Exchange Act.  The Court reasoned:

> By declaring certain contracts void, § 215 by its terms
> necessarily contemplates that the issue of voidness under
> its criteria may be litigated somewhere. At the very least
> Congress must have assumed that § 215 could be raised
> defensively in private litigation to preclude the
> enforcement of an investment advisers contract. But the
> legal consequences of voidness are typically not so limited.
> A person with the power to void a contract ordinarily may
> resort to a court to have the contract rescinded and to
> obtain restitution of consideration paid .... Moreover, the
> federal courts in general have viewed such language as
> implying an equitable cause of action for rescission or
> similar relief.  For these reasons we conclude that when
> Congress declared in § 215 that certain contracts are void,
> it intended that the customary legal incidents of voidness
> would follow, including the availability of a suit for

---

[1] Section 215(b) of the Investment Advisors Act provides that every contract made or performed in violation of the subchapter "shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract . . . ."  15 U.S.C. § 80b-15(b).

3

>     rescission ..., and for restitution.

Id. at 18-19 (citations omitted); see also id. at 19 (characterizing Mills decision as recognizing that § 29(b) of the Securities and Exchange Act conferred a "'right to rescind' a contract void under the criteria of the statute."); Regional Properties, Inc. v. Financial and Real Estate Consulting Co., 678 F.2d 552 (5th Cir. 1982) ("[S]ection 29(b), by implication, does provide a private equitable cause of action for rescission or similar relief.") (citation and internal quotation marks omitted); Couldock & Bohan, Inc. v. Societe Generale Securities Corp., 93 F. Supp. 2d 220 (D. Conn. 2000) (voiding contract made in violation of registration requirements under Section 29(b)). The weight of authority thus clearly supports the existence of an implied right of action to seek the unenforceability of a contract under Section 29(b).

As to Lawrence's argument that only an innocent party may seek to void a contract, neither the statutory language nor principles of equity require such a result. The statute does not by its terms limit the class of persons who may void a contract to innocent parties. At issue here, moreover, is not whether an unwilling innocent party may enforce a contract, as Mills contemplated, but whether defendants (whether or not at fault) may seek the nonenforcement of an illegal contract. As the in pari delicto doctrine is generally defined, both parties at fault

in an illegal contract are denied judicial relief.  In re Leasing Consultants Inc., 592 F.2d 103, 110 (2d Cir. 1979); see also Couldock & Bohan, Inc., 93 F. Supp. 2d at 233 (a "court will [not] lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law ... but if both parties are in pari delicto, the law will leave them where it finds them.") (quoting Dowling v. Slotnik 244 Conn. 781, 807 (Conn. 1998)).  "[T]his principle is based not on solicitude for the defendant, but on concern for the public welfare ...."  In re Leasing Consultants Inc., 592 F.2d at 110.  Given the public policy interests in broker-dealer registration, as discussed in the Court's prior ruling, the Court finds no basis to allow plaintiff to proceed on what, as alleged, is an illegal contract.[2]

### B.  Second Amended Complaint

The allegations in the Second Amended Complaint fall far short of the express written consent that this Court required

---

[2] Lawrence also relies on 15 U.S.C. § 78cc(c), which provides: "Nothing in this chapter shall be construed . . . (2) to afford a defense to the collection of any debt or obligation or the enforcement of any lien by any person who shall have acquired such debt, obligation, or lien in good faith for value and without actual knowledge of the violation of any provision of this chapter or any rule or regulation thereunder affecting the legality of such debt, obligation, or lien."  By its terms, Section 78cc(c)(2) applies to persons who have acquired a debt or obligation.  As defendants do not seek to collect a debt from Lawrence, this provision has no application to the issues in this case.

when giving plaintiff leave to amend his complaint, particularly when viewed in light of the procedural history of this case. Lawrence broadly alleges:

> 95. Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Lawrence provided WRSC written notice describing in detail the proposed transaction and Lawrence's proposed role therein.
>
> 96. Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, Lawrence provided WRSC written notice that Lawrence received or may receive compensation in connection with the transaction.
>
> 97. Upon information and belief, including but not limited to the foregoing information, for each transaction through February 10, 2003 as to which Lawrence participated, as to which Lawrence claims compensation is due him from Defendants, and which is a private securities transaction, WRSC advised Lawrence in writing that WRSC approved Lawrence's activities as aforesaid.

Second Amended Complaint [Doc. # 191] at ¶¶ 95-97.

Lawrence nowhere alleges _express_ written notice to and consent from Wilder Richman itself for each transaction in which he engaged; such information would necessarily be within his possession and had it existed Lawrence could have so pled. The issue now is not whether these allegations would satisfy Rule 8 had they been made on a clean slate. Against the backdrop of the procedural history of this case and when viewed in

conjunction with the other allegations in plaintiff's Second Amended complaint, the Court cannot at this stage find that the broad allegations provide a sufficient basis to reconsider the March 4 decision. For example, Lawrence's Second Amended Complaint also includes allegations that Smith acted on behalf of Wilder Richman, among others, Second Amended Complaint [Doc. # 191] at ¶ 30, that "the written communications from Smith to Lawrence generally exhibited TRGCT or TRG Capital letterhead or email addresses, although the title often used by Smith in such communications was 'Executive Vice President, The Richman Group of Companies,'" id. at ¶ 87; and that "[u]pon information and belief, TRGCT e-mail addresses" and "TRGCT and TRG Capital letterhead" "were used by Smith and other representatives of Defendants, TRGCT and WRSC without regard to the particular entity(ies) on whose behalf they held positions or were acting," id. at 88-89.

    Further, Lawrence alleges that "[o]n various dates prior hereto, representatives of defendants, TRGCT and WRSC have stated that Lawrence's activities were undertaken by Lawrence as WRSC's agent, including, but not limited to, Defendants' and WRSC's statement of February 22, 2005 that 'whatever [Lawrence] did, he did as an agent of [WRSC]' and that WRSC acted with the understanding that '[Lawrence] was representing [WRSC].'" Id. at ¶ 90. Lawrence also states: "Upon information and belief,

including but not limited to (i) the above-described statements by Defendants, TRGCT and WRSC and (ii) the fact that Lawrence's NASD Form U-4 was filed with the NASD through WRSC, WRSC was obligated through February 10, 2003 to supervise Lawrence's activities as such activities related to investments in the TRG Funds and to record the subject transactions on WRSC's books and records." Id. at ¶ 92.

Two points are worth noting about these amended allegations. First, Lawrence's allegations are at odds with themselves — he has simultaneously asserted that the transactions at issue are "private securities transactions" within the meaning of NASD Rule 3040, and that the transactions took place within the scope and in the regular course of Lawrence's employment with Wilder Richman, such that they could not be private securities transactions. In addition, Lawrence appears to have misunderstood the Court's earlier ruling. In his memorandum in support of his motion for reconsideration, Lawrence states:

> [W]ith respect to compliance with Rule 3040, the Ruling is unclear as to whether this Court was holding (i) that implied consent from WRSC, as opposed to actual written notice and consent, was insufficient or (ii) that the name 'Wilder Richman Securities Corporation' must actually appear on each written correspondence in order for compliance to have occurred. In this regard, Lawrence has not argued that implied notice and consent, as opposed to actual written notice and consent was sufficient, but rather that such notice to, and consent by, WRSC could be inferred from the allegations of Lawrence's then-operative complaint . . .

Plaintiff's Memorandum of Law in Support of Sua Sponte

8

Reconsideration of March 4, 2005 Ruling on Defendants' Motion to Dismiss [Doc. # 193] at 11.

Lawrence's memorandum goes on to restate arguments already presented to and rejected by this Court, as they necessarily rest on a theory of implied, not express consent from WRSC. For example, Lawrence again notes that Stephen Smith was acting in multiple capacities in his dealings with Lawrence, including his capacity as a principal of Wilder Richman.

This Court's March 4, 2005 ruling could not have been clearer — "to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction <u>expressly</u> to Wilder Richman, and must have received express written consent from Wilder Richman." Ruling at 23. Express written consent means correspondence expressly giving notice about and granting consent to a particular action, addressed to or from <u>Wilder Richman</u>, and correspondence with an agent acting on behalf of Wilder Richman would suffice only if that agent expressly stated in writing that he was acting on Wilder Richman's behalf for this purpose. As this Court made clear in its prior ruling, the mere fact that Lawrence had repeated dealings with Smith would not suffice under NASD Rule 3040. As the Court further noted in its prior ruling, "[t]o the extent the communications regarding the transaction took place as part of the regular course of one's employment with a member firm, the transaction would not be a

9

'private securities transaction' within the meaning of Rule 3040 (though such a transaction could be legal, with the contract subject to arbitration)."  Ruling at 22.

At this stage of these proceedings, the Court cannot countenance further gamesmanship in the effort to avoid arbitration.  Indeed, despite Lawrence's allegation that he engaged in "private securities transactions," what his specific allegations support is not a private securities transaction at all, but rather a contractual relationship in which Lawrence acted on behalf of Wilder Richman, and communicated with Smith as part of the regular course of his employment — which is precisely what defendants have long claimed and what this Court specifically queried counsel about at oral argument.  Such an alleged contract is indeed legal under 15 U.S.C. § 78o(a)(1) and NASD Rule 3040, but such a contract is subject to arbitration, as the U-4 Uniform Application for Securities Industry Registration, entered into by Lawrence and listing Wilder Richman as Lawrence's employer, requires arbitration of any dispute.  See Signature Box of U-4 Form, The Richman Group, Inc. et al. v. Lawrence, 3:03cv1940 (JBA) ("1940 Action") [Doc. #8, Ex. A] ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [self-regulatory organization] indicated in item

11 as may be amended from time to time . . . .").

Accordingly, upon reconsideration the Court declines to modify its earlier decision, and Counts I, II, III, IV, and VI of the Second Amended Complaint are dismissed.

                         IT IS SO ORDERED.

                               /s/

_____Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 10th day of August, 2005.**