```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

John F. Lawrence,              :
     Plaintiff,                :    3:03cv850 (JBA)
                               :    LEAD
v.                             :
                               :
The Richman Group Capital      :    3:04cv166 (JBA)
Corp., et al.,                 :    MEMBER
     Defendants.               :
```

### Ruling on Defendants' Motion for Dismissal and/or Summary Judgment [Doc. # 203]

This action arises out of an exclusivity agreement between plaintiff Lawrence and defendants, which agreement plaintiff alleges defendants breached when they used other representatives to market certain investment funds, thus depriving him of commissions to which he is entitled.[1]  Familiarity with the Court's earlier rulings in this action, and their detailed descriptions of the facts and circumstances underlying this dispute, as well as the apparent gamesmanship that has permeated its litigation, is presumed.

On March 4, 2005, this Court held that the contract plaintiff alleged with defendants was illegal and granted defendants' Motion to Dismiss Counts I, II, III, IV, and VI of plaintiff's Amended Complaint.  See Lawrence v. Richman Group

---

[1] This action has been consolidated with another suit brought by plaintiff involving essentially the same factual background, see Lawrence v. Richman Group of Connecticut, LLC, 3:03cv850 (JBA).

1

Capital Corp., 358 F. Supp. 2d 29 (D. Conn. 2005). The Court permitted plaintiff to file a Second Amended Complaint and on August 10, 2005, granted plaintiff's Motion for Reconsideration on the basis of that amended pleading, but adhered to its initial ruling. See Lawrence v. Richman Group Capital Corp., 03cv850 (JBA), 2005 WL 1949864 (D. Conn. Aug. 11, 2005).

Thus, the only claim remaining in plaintiff's Second Amended Complaint ("SAC"), see [Doc. # 191], is his claim for unjust enrichment. For the reasons that follow, defendants' motion to dismiss this claim, see [Doc. # 203], is GRANTED.

## I.   STANDARD[2]

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote

---

[2] While defendants' motion is for dismissal and/or summary judgment, because the Court concludes that plaintiff's last remaining claim for unjust enrichment should be dismissed as a matter of law for failure to state a claim upon which relief can be granted, the Court will not consider the motion as one for summary judgment.

omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

**II.  DISCUSSION**

As noted above, in its March and August 2005 rulings, the Court dismissed all of plaintiff's claims, except for the unjust enrichment claim, on the basis that the contract between plaintiff and defendants is illegal under federal securities laws.  Much of plaintiff's briefing on this motion amounts to a second motion for reconsideration of the Court's rulings concerning the validity of the alleged contract and will not be again considered here.[3]  This ruling solely addresses whether the unjust enrichment claim in plaintiff's Second Amended

---

[3] For example, the cases plaintiff cites relate to voiding contracts for violations of 15 U.S.C. § 78cc(b).  See Plaintiff's Opposition Br. [Doc. # 244] at 12.  Additionally, plaintiff reiterates earlier arguments related to the validity of the alleged contract, claiming, inter alia, (1) that no private cause of action exists pursuant to either 15 U.S.C. § 78o(a)(1) or NASD Rule of Conduct 3040; (2) that 15 U.S.C. § 78cc(b) may only be invoked by an "unwilling innocent party;" (3) that 15 U.S.C. § 78cc(b) only renders a contract voidable, not void ab initio, and therefore voidability must be determined on the basis of the factual circumstances of each case; and (4) that he sufficiently alleged compliance with the provisions NASD Rule of Conduct 3040 and 15 U.S.C. § 78o(a)(1).  See Plaintiff's Opposition Br. at 2-7.  Plaintiff also submits the affidavits of two NASD expert witnesses who purport to argue that plaintiff complied with NASD Rule of Conduct 3040 and that the alleged contract did not violate the Rule or 15 U.S.C. § 78o(a)(1).  See id. at 6-7.  The Court has twice already rejected plaintiff's arguments.

3

Complaint states a claim upon which relief can be granted where the contract between plaintiff and defendants is illegal and unenforceable.

Plaintiff's unjust enrichment claim alleges that "[d]efendants were benefitted and unjustly did not pay Lawrence for the benefits, all to Lawrence's detriment," and, as a result, "Lawrence has suffered damages, for which damages [d]efendants are liable to Lawrence."  SAC ¶¶ 164-65.  Defendants argue that plaintiff's claim is not one upon which relief can be granted because an unjust enrichment claim "cannot lie where the redress Plaintiff seeks arises out of a contractual relationship declared void under the applicable regulatory scheme [and] there are no additional allegations in the Second Amended Complaint that could properly support an extra-contractual basis for equitable relief."  Defendants' Motion at 3.

Unjust enrichment is an equitable remedy that "has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff."  Gagne v. Vaccaro, 255 Conn. 390, 409, 766 A.2d 416 (Conn. 2001).[4]  The three elements

---

[4] As noted in the Court's March 2005 ruling, in the plaintiff's first action (Case No. 03cv850), he disputed the choice of Connecticut law and argued that Maryland law should apply.  In the present case, however, plaintiff has relied on Connecticut and federal law and has not raised the issue of applicability of Maryland law or brought to the Court's attention any differences in the approaches of Connecticut and Maryland on

4

of an unjust enrichment claim are that: "(1) the defendant was benefitted, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment."  Id. at 409.  Because the Court concludes that plaintiff was not unjustly deprived of the proceeds of his services since they were performed pursuant to an illegal contract, and to allow him to recover such proceeds would undermine the remedial purpose and policies underlying 15 U.S.C. §§ 78cc(b) and 78o(a)(1) of the federal securities laws, plaintiff's claim cannot proceed as a matter of law.

    Defendants argue that a claim of unjust enrichment "cannot lie where the redress Plaintiff seeks arises out of a contractual relationship declared void under the applicable regulatory scheme."  See Defendants' Br. at 3 (citing Barrett Builders v. Miller, 215 Conn. 316, 576 A.2d 455 (Conn. 1990)).  The Court agrees.  The reasoning adopted by Connecticut courts addressing this issue is that equitable remedies providing for restitution are "not available for performance rendered pursuant to a contract that is unenforceable on public policy grounds" because to hold otherwise would undermine the very public policy at issue.  Barrett Builders, 215 Conn. at 323-24.  Thus, while recognizing that the result "might seem unequal, and therefore

---

these issues.  Accordingly, the Court will apply Connecticut law in this ruling.

unjust, to give the defendant the privilege of setting up his own participation in the illegal contract, resulting in his gain, and deny the privilege to the plaintiff, to his loss," courts nevertheless will not enforce an illegal contract, "nor will they enforce any alleged right directly springing from such contract, but if both parties are in pari dilecto, the law will leave them where it finds them."  See Design Development, Inc. v. Brignole, 20 Conn. App. 685, 690, 570 A.2d 221 (Conn. App. Ct. 1990) (plaintiffs could not recover on the basis of quantum meruit or unjust enrichment where such claims were directly aimed at recovering for the services rendered pursuant to the illegal contract) (internal quotation and citation omitted).

In Barrett Builders, the Connecticut Supreme Court held that a builder who conceded that its written contract with a customer violated the requirements of the Home Improvement Act, and was thus void, could not recover in equity for the alleged unjust enrichment of the customer.  See Barrett Builders, 215 Conn. at 326-28.  The relevant provision of the Home Improvement Act provides that "[n]o home improvement contract shall be valid unless it is in writing and unless it contains the entire agreement between the owner and the contractor."  Id. at 319 & n.3 (citing Connecticut Home Improvement Act, Conn. Gen. Stat. § 20-429).  The Court reasoned that the Home Improvement Act had been "passed for the protection of the public . . . [and]

6

remedial legislation must be construed liberally." Id. at 323. Rejecting the builder's argument that fairness requires equitable recovery where a builder is unable to seek damages for breach of contract, the Court concluded that if recovery was permitted notwithstanding the contract's invalidity, "the purpose and clear intent of [the Home Improvement Act] would be thwarted." Id. at 325. Likewise, in Design Development, it was held that where the contract between plaintiff architectural firm and its president, on the one hand, and defendants, on the other, was "illegal, void as against public policy and unenforceable" under a state statute providing that "no person shall practice architecture in this state . . . unless such person has secured a license" and providing for criminal and monetary penalties for violation therefor, see Design Development, 20 Conn. App. 685 at 688-89, plaintiff could not obtain equitable relief on a theory of quantum meruit:

> When the illegality, either in whole or in part, is in
> the thing which the party seeking to recover was to do,
> then there can be no recovery upon a quantum meruit.

Id. at 689 (citing McKnight v. Gizze, 119 Conn. 251, 256, 175 A. 676 (1934)).

The McKnight decision, cited in Design Development, further elaborates on this principle, explaining:

> When the illegality, either in whole or in part, is in
> the thing which the party seeking to recover was to do,
> then there can be no recovery upon a quantum meruit.
> But where the illegality was not in what the plaintiff

7

>was to do but in the manner in which he was to be
>compensated for doing the legal thing, then he can
>recover upon a quantum meruit for the reasonable value
>of his services.

McKnight, 175 A. at 678. While plaintiff argues that McKnight's distinction applies favorably to his claim because "[d]efendants' gripe has never been with the quality or scope of Lawrence's services," see Plaintiff's Opposition Br. at 20, it does not. McKnight concerned a suit to recover fees for legal services where there was no agreement as to the amount plaintiffs would charge for their services. Thus, McKnight is distinguishable from this case, where the illegality does not relate to the specifics of plaintiff's compensation, but instead concerns the very activities he now seeks to be compensated for in his unjust enrichment claim, i.e. his sales activities as a broker marketing securities for an unregistered broker-dealer.[5]

---

[5] The Connecticut caselaw relied on by plaintiff is distinguishable in two ways: (1) several cases involved statutes that either did not specifically void contracts which violated the statutory provisions, or provided for recovery of equitable relief or implied that such relief would not undermine the purposes of the statute itself; and (2) several cases do not reach the issue of the availability of equitable remedies when the underlying contract is declared void for illegality. See e.g., Location Realty, Inc. v. General Fin. Servs., Inc., 273 Conn. 766, 780-81, 873 A.2d 163 (Conn. 2005) (holding that plaintiff corporation whose president was not licensed as a broker would not be denied right to recover its commission where the licensing statute specifically provided that recovery would not be prevented where a licensee had "substantially complied" with the statute's provisions and where "it would be inequitable to deny such recovery," noting that accordingly the right to recovery would be "gauged . . . under all of the facts and circumstances of the case and whether it would be inequitable, in

Federal caselaw addressing this issue with respect to Section 78cc(b)(1) also supports this construction. For example, in <u>Regional Properties, Inc. v. Financial & Real Estate Consulting Company</u>, 678 F.2d 552 (5th Cir. 1982), real estate developers sued their securities broker to rescind their agreements with the broker, whom they discovered to have been unlicensed, pursuant to the Section 78cc(b) contract-voiding provision, and to recover commissions already paid to the broker. The Fifth Circuit affirmed the decision permitting rescission of the agreements and denying the broker any additional compensation for services purportedly rendered, <u>id</u>. at 563-64, reasoning that

---

light of those facts and circumstances, to deny . . . the right to recover"); <u>Gagne v. Vaccaro</u>, 255 Conn. 390, 398-405, 766 A.2d 416 (Conn. 2001) (holding that plaintiff lawyer could recover reasonable fee for services he had rendered on behalf of his former client from successor attorney, notwithstanding that plaintiff had failed to comply with statute requiring a written contingency fee agreement where there was no explicit provision in the statute voiding oral agreements, the important public policy of protecting the public from excessive legal fees was not implicated in this lawyer-against-lawyer recovery action, and the illegality at issue was "in the manner in which [plaintiff] was to be compensated for doing [a] legal thing," and not "in the thing which the party seeking to recover was to do"); <u>Wright Brothers Building, Inc. v. Dowling</u>, 247 Conn. 218, 220, 720 A.2d 235 (Conn. 1998) (concluding that the contract was legal and enforceable and therefore not addressing the issue of whether plaintiff was entitled to recover under its claim of unjust enrichment); <u>Fruin v. Colonnade One at Old Greenwich Ltd. P'ship</u>, 237 Conn. 123, 676 A.2d 369 (Conn. 1996) (concerning the ability of plaintiff purchaser to unilaterally rescind a contract based on illegality and distinguishing the statute at issue from a statute, such as the Home Improvement Act at issue in <u>Barrett Builders</u>, which expressly provides that any contract violative of the statute is void).

if an unregistered broker could recover his commission despite non-registration, "then the prohibition is a toothless tiger."[6] Id. at 564. The Court of Appeals concluded that "[t]he illegality of the transaction precludes the recovery of the damages for breach and any other judgment aimed at enforcement of the tainted contract."[7] Id.

Applying this reasoning to Lawrence's claim for unjust enrichment, it is clear that allowing him to proceed on his claim of unjust enrichment, which relates solely to the services performed and benefits received pursuant to an illegal contract, would render the prohibition in Section 78cc(b) a "toothless tiger." Indeed, the purpose of the Securities Exchange Act, including Sections 78o and 78cc(b), to institute a regulatory scheme for the long-range protection of investors,[8] would be thwarted if brokers could ignore registration requirements,

---

[6] In this case, it is undisputed that plaintiff is not a registered representative of defendants, because defendants themselves are not registered broker-dealers.

[7] The Fifth Circuit also held that plaintiffs could not recover restitution for payments already made to the broker. The Court notes that the portion of Regional Properties cited by plaintiff in his Opposition, regarding the balancing of equitable factors in determining availability of relief, concerns this part of the Court's decision and not whether the unregistered broker was entitled to additional commissions for services performed, and thus that discussion is not relevant here.

[8] See e.g., Blaise D'Antoni & Assocs., Inc. v. SEC, 290 F.2d 688, 689 (5th Cir. 1961); see also Roth v. SEC, 22 F.3d 1108, 1109 (D.C. Cir. 1994) (noting that registration is the "keystone of the entire system of broker-dealer regulation").

conduct their business, and then recover compensation for services rendered under equitable theories such as unjust enrichment.

Lastly, plaintiffs argue that defendants have asserted their Section 78cc(b) defense in bad faith and that thus plaintiff's unjust enrichment claim should proceed. See Plaintiff's Opposition Br. at 7-8. Plaintiff reiterates his arguments concerning the validity of his agreement with defendants, as discussed above, and argues that "it was entirely proper for Lawrence to have a compensation agreement with Richman Group companies other than [Wilder Richman Securities Corporation]" and that ultimate responsibility for ensuring that plaintiff's paperwork fully complied with the requirements of Rule 3040 rested with Stephen Smith as supervisory principal of Wilder Richman Securities Corporation. Id. While defendants agree that allegations of bad faith on the part of a defendant in raising an illegal contract defense could provide an exception to the prohibition against an unjust enrichment claim in the context of an illegal contract, see Defendants' Br. at 21 (citing Barrett Builders, 215 Conn. at 328), defendants contend that plaintiff has failed to sufficiently plead any such allegations.

Courts interpreting the dictum from Barrett Builders providing for a bad faith exception have explained:

> The central element giving rise to this exception is the recognition that to allow [a party] who acted in

> bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude [that party] from hiding behind the protection of the act.

Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501 (Conn. 1992); see also Dinnis v. Roberts, 35 Conn. App. 253, 257, 644 A.2d 971 (Conn. App. Ct. 1994) ("Absent proof of bad faith . . . [the Home Improvement Act] permits no recovery by a home improvement contractor under theories of quantum meruit or unjust enrichment if the [contract] fails to comply with the statutory requirements of the act.").

Plaintiff, however, appears to misapprehend what is required in order to successfully plead that defendants have asserted their illegal contract defense in bad faith. The Connecticut Supreme Court has defined "bad faith" as follows:

> Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose.

Habetz, 224 Conn. at 236-37. Plaintiff merely reiterates his arguments concerning the validity of the contract, which the Court has already rejected, and argues that this alleged validity demonstrates that defendants have brought their defense in bad faith. He makes no allegations to the effect that defendants purposefully and knowingly failed to comply with the requirements

12

of Section 78o(b)(1), purposefully misled him into believing that all registration requirements had been met, and now seek to take advantage of their own wrong, and avoid paying plaintiff for services rendered, by invoking violation of Section 78o(b)(1) as a defense.[9]  Cf. Wadia Enter., Inc. v. Hirschfeld, 224 Conn. 240, 249, 618 A.2d 506 (Conn. 1992) (finding that plaintiff did not present a claim of bad faith, noting that "plaintiff did not allege that the defendants knew of the violation earlier, or that they purposely drafted the contract in violation of the act in order later to avoid the obligation to pay").  Plaintiff makes no allegation that defendants acted with a sinister or interested motive or a dishonest purpose in asserting the illegal contract defense.  In short, plaintiff has failed to plead bad faith.[10]

In its March 2005 ruling, the Court allowed plaintiff's unjust enrichment claim to stand pending further record

---

[9] In fact, defendants' position is completely consistent with their position that plaintiff was never enlisted to provide services for them, but instead was at all times acting on behalf of Wilder Richman Securities Corporation.

[10] Plaintiff's argument that defendants acted in bad faith in raising the illegal contract defense because they "convinced this Court that the ___@trqofct.com email addresses do not sufficiently confirm status as an agent of WRSC [but] continue[] to allow Smith and others to use email addresses on behalf of WRSC through the present," see Pl's Opposition Br. at 19 & n.14 (citing defendants' interrogatory responses), is inapposite because the Court has already rejected plaintiff's argument that the use of company-specific email addresses alone can constitute the necessary express written consent sufficient to bring plaintiff within the registration compliance requirements.  See Lawrence v. The Richman Capital Corp., 2005 WL 1949864, at *4.

development on the possibility that plaintiff could develop sufficient evidence to support allegations of conduct justifying an equitable remedy, notwithstanding the illegality of the alleged contract.  See Lawrence, 358 F. Supp. 2d at 43 & n.18. However, plaintiff does not attempt to argue that any allegations of such conduct exist in his Second Amended Complaint's unjust enrichment claim; plaintiff merely incorporates the paragraphs of his earlier claims – all concerning the services he performed under the illegal contract between plaintiff and defendants – and alleges that "[d]efendants were benefitted and unjustly did not pay Lawrence for the benefits."  SAC ¶¶ 163-64.  Because it is clear that plaintiff's unjust enrichment claim is in reality a disguised claim for breach of the illegal contract, and because plaintiff has made no allegations which, if proved, could establish that defendants have asserted their statutory violation defense in bad faith, plaintiff's unjust enrichment cause of action (Count V) is dismissed for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, defendants' Motion for Dismissal and/or Summary Judgment is GRANTED and plaintiff's last remaining

claim for unjust enrichment (Count V) is DISMISSED.

                                  IT IS SO ORDERED.

                                        /s/
                                Janet Bond Arterton
                                United States District Judge

**Dated at New Haven, Connecticut this 12th day of December, 2005.**