### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| John F. Lawrence, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:03cv850 (JBA) |
| | : | LEAD |
| The Richman Group of | : | |
| Connecticut, LLC, | : | |
|     Defendant. | : | |

### Ruling on Defendants' Motion to Dismiss
### and/or for Summary Judgment [Doc. # 243]

In this action plaintiff Lawrence – a stock broker licensed
with the National Association of Securities Dealers ("NASD") –
has asserted claims against The Richman Group of Connecticut, LLC
("TRGCT"), which is "a syndicator of real estate limited
partnerships, styled as investment funds, created as vehicles for
investment by institutional investors."  Second Amended Complaint
("SAC") [Doc. # 27] at ¶ 6.  Plaintiff claims that defendant
violated a mutual exclusivity agreement between them by using
other third-party brokers to market TRGCT's investment funds,
thus depriving him of commissions to which he is entitled.
Familiarity with the Court's earlier rulings in this action and
in a related action with which this action has been
consolidated,[1] as well as the factual background underlying both

_____

[1] See Lawrence v. The Richman Group of Connecticut, LLC,
03cv850 (JBA), 2004 WL 2377140 (D. Conn. Sept. 30, 2004);
Lawrence v. Richman Group Capital Corp., 358 F. Supp. 2d 29 (D.
Conn. 2005); Lawrence v. Richman Group Capital Corp., 03cv850
(JBA), 2005 WL 1949864 (D. Conn. Aug. 11, 2005).

actions, is presumed.

Plaintiff's October 9, 2003 Second Amended Complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, tortious interference, fraud, negligent misrepresentation, and unjust enrichment.  See SAC, ¶¶ 53-81.  This action (the "First Lawrence Action") was consolidated with a second action also filed by plaintiff involving essentially the same factual background (the "Second Lawrence Action") on September 14, 2004.  See [Doc. # 98].  The Court dismissed plaintiff's claims in this First Lawrence Action for conversion, tortious interference, and fraud on September 30, 2004, leaving claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and unjust enrichment.  See [Doc. # 117].

Subsequently, on March 4 and August 17, 2005, this Court dismissed all but one of the claims in the Second Lawrence Action, including claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  See Lawrence v. Richman Group Capital Corp., 358 F. Supp. 2d 29 (D. Conn. 2005); Lawrence v. Richman Group Capital Corp., 03cv850 (JBA), 2005 WL 1949864 (D. Conn. Aug. 11, 2005) (on motion for reconsideration).  Thereafter, the Court issued an Endorsement Order directing that briefing proceed on the motions to dismiss and/or for summary judgment on the remaining claims in both the

First and Second Lawrence Actions.  <u>See</u> [Doc. # 242].  Briefing

on the remaining claims in both actions ensued.[2]  For the reasons

that follow, the claims remaining in this action are dismissed.

**I.   STANDARD**[3]

In ruling on a motion to dismiss under Fed. R. Civ. P.

12(b)(6), the Court must accept all well-pleaded allegations as

true and draw all reasonable inferences in favor of the pleader.

<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Allen v.</u>

---

[2]  The remaining claims in this action are Count I for
breach of contract, Count II for breach of the implied covenant
of good faith and fair dealing, Count IV for negligent
misrepresentation, and Count VII for unjust enrichment.  The one
claim for unjust enrichment remaining in the Second Lawrence
Action has been dismissed, <u>see</u> [Doc. # 255].

[3] Plaintiff's argument that the Court should treat the
instant motion as one for summary judgment, and not for
dismissal, because the Court's August 2005 Endorsement Order
directed defendant to file a motion for summary judgment and
because defendant has previously filed a motion to dismiss in
this action which was granted in part and denied in part, is
unpersuasive.  Given the complicated procedural nature of this
case, including consolidation and the filing of amended and
second amended complaints in both underlying actions, as well as
the procedural posture of this action given the March and August
2005 rulings in the Second Lawrence Action which are relevant to
the instant motion, the Court finds it appropriate to treat
defendant's motion as one for dismissal under Rule 12(b)(6).  <u>See</u>
<u>Schwartz v. Compagnie General Translantique</u>, 405 F.2d 270, 273
(2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for
failure to state a cause of action upon motion for summary
judgment.  A motion for summary judgment may be made solely on
the pleadings, when it is so made it is functionally the same as
a motion to dismiss or motion for judgment on the pleadings.")
(internal quotation and citation omitted); <u>Katz v. Molic</u>, 128
F.R.D. 35, 38 (S.D.N.Y. 1989) (a trial judge may treat a motion
for summary judgment as a motion to dismiss for failure to state
a claim, with or without notice to the parties).

<u>Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991).  A

"complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to

relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (footnote

omitted); <u>Jahgory v. N.Y. State Dep't of Educ.</u>, 131 F.3d 326, 329

(2d Cir. 1997).  "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.  Indeed it may appear on the face

of the pleadings that a recovery is very remote and unlikely but

that is not the test." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

(1974).

## II.  DISCUSSION

### A.  Counts I and II: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

At the outset, the Court notes that plaintiff's claims at

issue in the instant motion are largely predicated on allegations

identical to those at issue in the Court's rulings in the Second

Lawrence Action.[4]  Accordingly, the Court incorporates by

---

[4] Specifically, like his complaint in the Second Lawrence
Action, plaintiff's Second Amended Complaint here is based on
oral and written communications between plaintiff and Stephen B.
Smith, the Executive Vice President of TRGCT, concerning the sale
of securities of certain funds of TRGCT and its affiliates (Smith
is also the Executive Vice President of The Richman Group, Inc.,
The Richman Group Capital Corporation, and certain TRG Funds, all
defendants in the Second Lawrence Action).  Plaintiff alleges
that in late 1997 or early 1998, he approached TRGCT with an
investment fund concept known as the "Bank Fund," which "would

4

reference the reasoning and conclusions of its March and August
2005 rulings in the Second Lawrence Action, dismissing identical
claims of breach of contract and breach of the implied covenant
of good faith and fair dealing.

Defendant TRGCT argues that the Court's illegal contract
determinations in the Second Lawrence Action dictate dismissal of

_____

enable institutional banking investors to invest in affordable
housing located in specifically targeted geographic areas."  SAC
¶ 7.  Plaintiff further alleges that Smith, acting on behalf of
TRGCT, agreed that "TRGCT would syndicate the Bank Fund if
Lawrence could introduce to TRGCT institutional banking investors
willing to invest an aggregate of not less than twenty million
dollars . . . to forty million dollars" and that if Lawrence were
successful, he "would have the exclusive right to market to
institutional banking investors nationwide any investment funds
syndicated by TRGCT or its affiliates, including the Bank Fund."
Id. at ¶ 11.  Plaintiff alleges that after learning that a third-
party broker/dealer – Beacon Hill Capital Corporation – had
contacted certain institutional banking investors concerning the
Bank Fund, plaintiff demanded that TRCGT comply with its promise
concerning exclusivity, and Smith and Lawrence thus created a
"Registered Client" list "wherein the institutional banking
investors that Lawrence contacted regarding investing in the Bank
Fund were listed as Lawrence's clients."  Id. at ¶¶ 16-18.
Plaintiff alleges that subsequently, beginning in August 1998 and
through early 1999, Lawrence and Smith came to an agreement
whereby Lawrence was given the exclusive right to market TRGCT
funds, including the Bank Fund, to his registered clients (with
certain exceptions), and in return Lawrence "would perform
services exclusively for TRGCT" and "would not introduce any
institutional banking investors to any other syndicator."  Id. at
¶¶ 21-29.  Plaintiff alleges that in reliance upon the agreement,
he "did not pursue opportunities to develop and market competing
investment products with other syndicators," id. at ¶ 32, but
that TRGCT breached its exclusivity agreement with plaintiff by
using other brokers and representatives to solicit plaintiff's
Registered Clients to invest in TRGCT funds.  Id. at ¶¶ 37-40.
Plaintiff alleges that as a result, Lawrence's commissions were
reduced, eliminated, or returned, as part of the solicitation of
Lawrence's Registered Clients by other brokers.  Id. at ¶¶ 41-42.

plaintiff's claims for breach of contract, breach of the implied
covenant of good faith and fair dealing, and negligent
misrepresentation.  Because this last claim was not asserted in
the Second Lawrence Action, and thus not dismissed in the Court's
rulings in that action, it will be analyzed below.  With respect
to the first two claims, because the factual allegations
underlying these claims are essentially identical to those
underlying plaintiff's claims in the Second Lawrence Action, the
Court's conclusions in its earlier rulings dictate dismissal.[5]

Specifically, the contract plaintiff alleges between himself
and TRGCT is illegal and thus void under federal securities laws.
It therefore cannot provide the basis for a breach of contract
action.  The relevant registration requirement on which
defendant's claim of illegality is based provides:

> It shall be unlawful for any broker or dealer which is
> either a person other than a natural person or a
> natural person not associated with a broker or dealer
> which is a person other than a natural person (other
> than such a broker or dealer whose business is
> exclusively intrastate and who does not make use of any
> facility of a national securities exchange) to make use
> of the mails or any means or instrumentality of
> interstate commerce to effect any transactions in, or
> to induce or attempt to induce the purchase or sale of,
> any security (other than an exempted security or

---

[5]  Plaintiff acknowledges "the likelihood of this Court
ruling on [plaintiff's] arguments in the same manner as they were
resolved in this Court's [earlier] ruling[s]," see Plaintiff's
Opposition Br. [Doc. # 251] at 6 & n.6, but reasserts and
incorporates all arguments advanced in the Second Lawrence Action
to "preserve an adequate district court record" in this First
Lawrence Action.

commercial paper, bankers' acceptances, or commercial
bills) unless such broker or dealer is registered in
accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1).  Lawrence acknowledges that he is not a

registered representative of defendant TRGCT because TRGCT itself

was "not registered as a broker[] in accordance with all

applicable federal and state laws."[6]  <u>Lawrence v. Wilder Richman</u>

<u>Sec. Corp.</u>, 04cv538 (JBA), Complaint [Doc. # 1], at ¶ 72.

Further, 15 U.S.C. § 78cc(b) provides that:

Every contract made in violation of any provision of
this chapter or of any rule or regulation thereunder,
and every contract (including any contract for listing
a security on an exchange) heretofore or hereafter
made, the performance of which involves the violation
of, or the continuance of any relationship or practice
in violation of, any provision of this chapter or any
rule or regulation thereunder, shall be void (1) as
regards the rights of any person who, in violation of
any such provision, rule, or regulation, shall have
made or engaged in the performance of any such
contract. . . .

15 U.S.C. § 78cc(b).  Thus, because the alleged contract

described in plaintiff's Second Amended Complaint was for

_____

[6]  As noted in the Court's March 2005 ruling in the Second
Lawrence Action, in adjudicating a Rule 12(b)(6) motion, a
district court may consider matters as to which judicial notice
may be taken.  <u>See Leonard F. v. Israel Discount Bank of N.Y.</u>,
199 F.3d 99, 107 (2d Cir. 1999).  Judicial notice is permitted of
a fact "not subject to reasonable dispute in that it is . . .
capable of accurate and ready determination by resort to sources
who accuracy cannot reasonably be questioned."  Fed. R. Evid.
201(b).  Thus, the Court may take judicial notice of "prior
pleadings, orders, judgments, and other items appearing in the
Court's records of prior litigation that is closely related to
the case sub judice."  <u>Hackett v. Storey</u>, 04cv395 (JBA), 2003 WL
23100328, at *2 (D. Conn. Dec. 30, 2003) (citations omitted).

plaintiff to act as TRGCT's agent in soliciting investors for its funds, and Lawrence acknowledges that TRGCT was not registered as a broker-dealer, TRGCT argues that the performance of the alleged contract would not be legal, and is void.[7]

-------

[7] Plaintiff's argument that defendant's Section 78cc defense is time-barred lacks merit.  First, the plain language of the statute applies only to "actions maintained in reliance upon th[e] subsection," i.e., affirmative actions for rescission, not to defenses raised.  See 15 U.S.C. § 78cc(b) (emphasis added).  Additionally, the statute of limitations also applies only to claims of illegality based on violations of 15 U.S.C. § 78o(c)(1) or (2), which concern securities fraud, and not to the violation at issue here of § 78o(a)(1), which concerns broker-dealer registration requirements.  See id.; see also Guarantee Ins. Agency Co. v. Mid-Cont'l Realty Corp., 57 F.R.D. 555, 561 (N.D. Ill. 1972) (the statute of limitations provision of 15 U.S.C. § 78cc(b) "is only applicable to actions based on a violation of § 15(c)(1) of the 1934 Act) (the statute has since been amended to include § 15(c)(2)); Livingston v. Weis, Voisin, Cannon, Inc., 294 F. Supp. 676, 679 (D.N.J. 1968) (same).  Additionally, as defendant argues, application of the Section 78cc statute of limitations to defendant's defense here would lead to absurd results in that an unregistered broker could simply wait to file suit on an illegal contract until after the expiration of the Section 78cc statute of limitations and thus preclude a defendant from raising the defense and effectively allow the broker to circumvent the federal registration requirements.
Celsion Corporation v. Stearns Management Corporation, 157 F. Supp. 2d 942 (N.D. Ill. 2001), cited by plaintiff, involved such an affirmative action to void a contract pursuant to Section 78cc and not a defense, as here, and also noted that Section 78cc(b) does not provide any express statute of limitation for the rescission of a transaction for violation of the broker-dealer registration requirements of 15 U.S.C. § 78o(a), the same violation at issue in this action.  Carter Financial Corporation v. Atlantic Medical Management, L.L.C., 691 N.Y.S.2d 529, 262 A.D.2d 178 (N.Y. App. Div. 1999), also cited by plaintiff, involved New York state law and appears to have erroneously dismissed a defense of illegality based on a violation of 15 U.S.C. § 78o(a) (registration requirements) as untimely, where the statute of limitations by its plain language applies only to actions brought for violations of 15 U.S.C. 78o(c).

In summary, plaintiff's argument that he complied with NASD Rule 3040, and that therefore his alleged contract with TRGCT is legal, fails for the reasons discussed in the Court's March and August 2005 rulings in the Second Lawrence Action.  For plaintiff's contract to be enforceable, Wilder Richman Securities Corporation ("WRSC"), the entity through which Lawrence was a registered representative, must have provided express written consent for Richman to act on behalf of TRGCT, which plaintiff does not allege.  See Lawrence, 358 F. Supp. 2d at 36-40 (detailing plaintiff's argument and the requirements of Rule 3040); Lawrence, 2005 WL 1949864. at **3-5 (same). Notwithstanding his allegations that Stephen Smith and others with whom plaintiff had certain communications were acting on behalf of WRSC,[8] as held in the August 2005 ruling, the express written consent requirement of Rule 3040 "means correspondence expressly giving notice about and granting consent to a particular action, addressed to or from [WRSC], and correspondence with an agent acting on behalf of [WRSC] would suffice only if that agent expressly stated in writing that he

---

[8]   Not only is plaintiff's claim that Smith was acting on behalf of WRSC insufficient to establish express written consent in compliance with Rule 3040, it is also internally inconsistent: in his Second Amended Complaint, plaintiff also alleges that "in his dealings with Lawrence from approximately late 1997 or early 1998 through the present, Smith acted on behalf of TRGCT."  SAC at ¶ 10.

was acting on [WRSC's] behalf for this purpose."[9]  <u>Lawrence</u>, 2005
WL 1949864. at *4.  Plaintiff makes no allegations which if
proved could satisfy this requirement.[10]

Accordingly, the contract plaintiff alleges with TRGCT
violates 15 U.S.C. § 78o(a)(1), is thus void pursuant to 15
U.S.C. § 78cc(b), and plaintiff's breach of contract claim (Count
I) is dismissed.  Additionally, plaintiff's claim for breach of

---

[9]  Plaintiff's resort to the affidavits of two NASD expert
witnesses who purport to argue that plaintiff complied with NASD
Rule of Conduct 3040 and that the contract between plaintiff and
defendant did not violate the Rule or 15 U.S.C. § 78o(a)(1) is
unavailing because plaintiff's arguments concerning the validity
of the alleged contract and compliance with Rule 3040 were
already rejected in the March and August 2005 rulings in the
Second Lawrence Action.  Furthermore, the proffered expert
testimony is not competent for the purpose of espousing legal
conclusions such as those offered here, <u>i.e.</u>, that the
circumstances alleged by plaintiff did not violate Rule 3040.
<u>See</u> <u>e.g.</u>, <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1294 (2d
Cir. 1991) ("As a general rule an expert's testimony on issues of
law is inadmissible); <u>United States v. Scop</u>, 846 F.2d 135, 138-39
(2d Cir. 1988) (holding that expert testimony stating that
defendants "engaged in a manipulative and fraudulent scheme" and
"fraudulent manipulative practices" constituted impermissible
legal conclusions); <u>Marx & Co., Inc. v. Diners' Club, Inc.</u>, 550
F.2d 505, 508-11 (2d Cir. 1977) (holding that expert testimony
construing contract terms and giving conclusions as to the legal
significance of various facts was impermissible, noting "[w]ith
the growth of intricate securities litigation over the past forty
years, we must be especially careful not to allow trials before
juries to become battles of paid advocates posing as experts on
the respective sides concerning matters of domestic law").

[10] Unlike the complaint in the Second Lawrence Action, the
Second Amended Complaint here does not contain any allegations
concerning written correspondence between Lawrence and WRSC.  In
any case, even those general allegations in the Second Lawrence
Action were held insufficient to meet the express written consent
requirement of Rule 3040.  <u>See</u> <u>Lawrence</u>, 1999 WL 1949864, at *3.

the implied covenant of good faith and fair dealing (Count II) is also dismissed because "'the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.'"  See Lawrence, 358 F. Supp. 2d at 40-41 (citing Hoskins v. Titan Value Equities Group, Inc., 52 Conn. 789, 793, 749 A.2d 1144 (Conn. 2000)).

## B.  Count VI: Negligent Misrepresentation

Defendant argues that because plaintiff's negligent misrepresentation claim "is merely his breach of contract claim with a different name," it must be dismissed.  Defendant's Moving Br. [Doc. # 243] at 4. Plaintiff does not dispute that his negligent misrepresentation claim is based on the same Smith representations that form the basis of the illegal contract, and on TRGCT's alleged failure to act in accordance with those representations, but again relies on his arguments that the alleged contract is not, as the Court has twice before held, illegal.

In order to successfully plead a claim of negligent misrepresentation under Connecticut law, plaintiff must allege that defendant provided false information to plaintiff, which plaintiff justifiably relied on to his detriment.[11]  Plaintiff's

---

[11]   See Updike, Kelly & Spellacy, P.C. v. Beckett, 269 Conn. 613, 643, 850 A.2d 145 (Conn. 2004) (a defendant who, in its commercial or professional activities, "supplies false information for the guidance of others in their business transactions, [will be] subject to liability for pecuniary loss

negligent misrepresentation claim incorporates the factual
allegations that form the basis of his other claims, including
his breach of contract claim, and further alleges that:

> Smith negligently made the aforesaid representations in
> that Smith should have known that TRGCT could not or
> would not act in accordance therewith and in that TRGCT
> negligently omitted to correct its earlier
> representations, even if not false at the time such
> representations were made, upon TRGCT failing to act in
> accordance therewith as set forth above, and TRGCT
> failed to disclose to Lawrence such circumstances as
> those circumstances occurred.

SAC at ¶¶ 77-78.  Plaintiff fails to plead justifiable reliance
and acknowledges that the communications he had with Smith on
which his negligent misrepresentation claim is based may not have
been false at the time they were made.[12]  Plaintiff's negligent
misrepresentation claim is thus in essence a claim that TRGCT
failed to comply with the terms of the illegal contract that was
formed by the communications between plaintiff and Smith.

   As the Court noted in its March 2005 ruling in the Second
Lawrence Action, "'[i]t is unquestionably the general rule,
upheld by the great weight of authority, that no court will lend

---

caused to them by their justifiable reliance upon the
information, if [defendant] fails to exercise reasonable care or
competence in obtaining or communicating the information")
(citing Restatement (2d) Torts § 552 (1979)).

   [12]  Absent allegations that the representations were false at
the time they were made, plaintiff could not prove reliance, even
if pled, because the representations would not become false or
negligently uncorrected until the time of breach, at which point
there could be no reliance.

12

its assistance in any way toward carrying out the terms of a
contract, the inherent purpose of which is to violate the law.
In case any action is brought in which it is necessary to prove
the illegal contract in order to maintain the action, courts will
not enforce it, nor will they enforce any alleged right directly
springing from such contract.'"  Lawrence, 358 F. Supp. 2d at 40
(citing Solomon v. Gilmore, 248 Conn. 769, 785 (Conn. 1999)).
Plaintiff's negligent misrepresentation claim clearly is one
"springing" from the alleged, and unenforceable, contract between
plaintiff and defendant as the claim arises from the same alleged
representations that form the basis of the alleged contract and
stem from the same alleged noncompliance with those
representations.  Plaintiff cannot be permitted to circumvent the
illegality of the contract by asserting what is essentially his
breach of contract claim under the label of misrepresentation.[13]

_____

[13] See Mars Electric, LLC v. Wooster Par, LLC, No.
DBDCV044000373S, 2005 WL 469327, at *3 & n.2 (Conn. Super. Ct.
Jan. 28, 2005) (striking a claim for "misrepresentation" founded
on the allegation that defendant breached an unenforceable oral
agreement, noting "[a] party cannot avoid [a statutory bar] by
labeling the cause of action as one to recover damages for fraud
where . . . proof of a contract, void under [the statutory bar]
is essential to maintain the action" and that "claims of fraud,
negligent misrepresentation and other claims were unenforceable
because each 'ha[d] as its nucleus an unenforceable oral
contract'") (citing Weakley v. East, 900 S.W.2d 755, 759 (Tex.
App. Ct. 1995)); see also The Mark Andrew of the Palm Beaches,
Ltd. v. GMAC Comm. Mortgage Corp., 265 F. Supp. 2d 366, 382
(S.D.N.Y. 2003) (granting summary judgment where plaintiffs'
negligent misrepresentation and fraud claims were "based on
alleged oral representations [and] promises" that were
"identical" to the allegations forming the basis of plaintiffs'

### C.   Count VII: Unjust Enrichment

The Court incorporates its analysis of plaintiff's unjust enrichment claim, dismissing that claim from the Second Lawrence Action.  See [Doc. # 255].  As was the case with that claim, the alleged services provided to, and alleged benefits received by, defendant TRGCT that form the basis for plaintiff's unjust enrichment claim are only those directly related to the parties' performance or non-performance of the illegal and unenforceable contract.  Plaintiff's allegation that "[a]s a result of TRGCT's conduct as aforesaid, TRGCT has been unjustly enriched," see SAC at ¶ 81, fails under the general rule that the illegality of the underlying contract "precludes the recovery of the damages for breach and any other judgment aimed at enforcement of the tainted contract."  Regional Props., Inc. v. Fin. & Real Estate Consulting Co., 678 F.2d 552, 564 (5th Cir. 1982)[14] (holding that

---

breach of contract claim seeking to enforce an unenforceable contract, noting "plaintiffs are . . . prohibited from recovering on tort claims, including claims for fraud and negligent misrepresentation, that seek damages based on the same conduct and representations that are merely derivative of their claim for breach of an oral contract"), aff'd 96 Fed. Appx. 750 (2d Cir. 2004).

[14] Plaintiff again seeks to distinguish Regional Properties, which he unsuccessfully relied on in his opposition brief in the Second Lawrence Action.  He now claims that Regional Properties bars only "quasi-contract" theories of recovery, and not claims for unjust enrichment, overlooking the fact that courts frequently use these terms interchangeably.  See Gagne v. Vaccaro, 80 Conn. App. 436, 441, 835 A.2d 491 (Conn. App. Ct. 2003) ("'An unjust enrichment claim is an action in quasi contract.'") (citing Misisco v. La Maita, 150 Conn. 680, 684, 192

an unregistered broker who performed his part of an illegal contract could not recover for his services under either legal or equitable theories, because if he could recover his commission despite non-registration, then the contract-voiding provision in 15 U.S.C. § 78cc(b) would be rendered "a toothless tiger").

Accordingly, plaintiff's unjust enrichment claim (Count VII), which stems from the same factual allegations that show an illegal and unenforceable contract, is not viable and is dismissed.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 243] is GRANTED and the remaining claims (Counts I, II, VI, and VII) in plaintiff's Second Amended Complaint [Doc. # 27] are DISMISSED.  Because both complaints in this consolidated case

---

A.2d 891 (Conn. 1963)) (internal alteration omitted); accord A. Secondino & Son, Inc. v. LoRicco, 215 Conn. 336, 340, 576 A.2d 464 (Conn. 1990) (oral contract failed to comply with the statutory written contract requirement, plaintiff contractor was not entitled to recovery in quasi contract for materials and services performed pursuant to oral contract, and plaintiff's quantum meruit and unjust enrichment claims were dismissed). Moreover, the principles discussed in Regional Properties are necessarily applicable to other equitable theories beyond quasi-contract because otherwise recovery under any such theory would effectively circumvent the prohibition in federal securities laws.

15

have now been dismissed, this case will now be closed.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 12th day of December, 2005.**