IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------x
                                          :
JOHN F. LAWRENCE                          :
                                          :        3:03 CV 850 (JBA)
                                          :
v.                                        :
                                          :
                                          :
THE RICHMAN GROUP OF                      :        DATE: MARCH 10, 2006
CONNECTICUT, LLC, ET AL.                  :
                                          :
-----------------------------------------------------------x
```

## RULING ON DEFENDANTS' RENEWED MOTION FOR SANCTIONS

Plaintiff John F. Lawrence filed three actions in this Court. Plaintiff is a stock broker licensed with the National Association of Securities Dealers ["NASD"]. On December 18, 2002, he first commenced this lawsuit against defendant The Richman Group of Connecticut, LLC ["defendant TRG"] in federal court in Maryland and one month later, on January 14, 2003, plaintiff filed his First Amended Complaint.[1] (Dkt. #5). Defendant TRG is a syndicator of real estate limited partnerships, created as vehicles for investment by institutional investors; plaintiff's claims arise from defendant TRG's use of other third party brokers to market TRG's investment funds, which plaintiff alleges was contrary to his exclusivity agreement, depriving him of commissions. On May 13, 2003, the lawsuit was transferred to this Court, 3:03 CV 850 (JBA), and on October 9, 2003, plaintiff filed his Second Amended Complaint in which he asserted the following seven counts: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); conversion (Count III); tortious interference (Count IV); fraud (Count V); negligent misrepresentation (Count VI);

---

[1]Unless otherwise indicated, the docket numbers refer to this present action, 3:03 CV 850 (JBA).

and unjust enrichment (Count VII).  (Dkt. #27).[2]

On October 23, 2003, defendant TRG filed a Motion to Dismiss (Dkt. #28), with respect to Counts II, III, IV and V, which was granted by U.S. District Judge Janet Bond Arterton in her Ruling on Defendant's Motion to Dismiss, filed on September 30, 2004 (Dkt. #117), with respect to Counts III, IV and V (at 5-12, 15-19), but denied without prejudice to renew at the summary judgment stage with respect to Count II (at 12-15).    See also Lawrence v. The Richman Group of Connecticut, LLC, 2004 WL 2377140 (D. Conn. Sept. 30, 2004).

On January 30, 2004, plaintiff commenced his second lawsuit against defendants The Richman Group Capital Corporation ["defendant TRG Capital"], The Richman Group, Inc. ["defendant TRG, Inc."], and more than twenty affiliated businesses, 3:04 CV 166 (JBA). Plaintiff's claims in this second lawsuit are similar to those in the first lawsuit, namely that defendants, which are syndicators of real estate limited partnerships, created as investment vehicles for institutional investors, used other parties to market these funds, in violation of his exclusivity agreement, depriving him of commissions.  In this second lawsuit, plaintiff alleged the following six counts: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); conversion (Count III); statutory theft, in violation of CONN. GEN. STAT. § 52-564 (Count IV); unjust enrichment (Count V); and violation of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 46-110a et seq. (Count VI).  On

---

[2]Prior thereto, on October 31, 2002, The Richman Group, Inc. ["TRG, Inc."] and Wilder Richman Securities Corp. ["Wilder Richman"] commenced a declaratory judgment action in this Court against Lawrence, 3:02 CV 1940 (JBA), regarding the obligations that they owed to Lawrence.  On January 21, 2003, TRG, Inc. and Wilder Richman filed a Motion to Compel Arbitration (3:02 CV 1940, Dkt. #7), on the grounds that the registration entered into between Lawrence and Wilder Richman, as Lawrence's employer, required arbitration of any dispute between them.    At oral argument held on July 14, 2003, Judge Arterton denied the Motion to Compel, based largely upon Lawrence's representation that although he is an "associated person" of Wilder Richman, he had no claim against Wilder Richman or TRG, Inc., but only against TRG. (3:02 CV 1940, Dkts. ##29 & 35).  On August 7, 2003, TRG, Inc. and Wilder Richman withdrew the lawsuit.  (3:02 CV 1940, Dkt. #34).

2

September 22, 2004, this second action, 3:04 CV 166 (JBA), was consolidated into the first action, 3:03 CV 850 (JBA).  (3:04 CV 166, Dkt. #72).[3]

On May 3, 2004, defendants had filed their Motion to Dismiss with respect to all six counts of the second action (3:04 CV 166, Dkt. #23), which was then redocketed in 3:03 CV 850 (Dkt. #104).   This motion was granted by Judge Arterton in her Rulings on Defendant[s'] Motion to Dismiss; Plaintiff's Motion to Add Defendants; and Defendants' Motion to Strike, filed on March 7, 2005 (Dkt. #182)["'850 March 2005 Ruling"], with respect to Counts I, II, III, IV and VI (at 14-28, 31), and denied without prejudice to renew with respect to Count V (at 29-30).   In addition, with respect to Count I, Judge Arterton indicated that she would reconsider her conclusion if plaintiff amended his complaint to allege compliance with NASD Rule 3040, namely that he must have given detailed written notice of each proposed transaction expressly from defendant Wilder Richman and must have received written consent from defendant Wilder Richman (at 14-23).   See also Lawrence v. The Richman Group Capital Corp., 358 F. Supp. 2d 29 (D. Conn. 2005).

On March 21, 2005, plaintiff filed his Second  Amended Complaint (Dkt. #191), with the same six counts as in the original 3:04 CV 166 (JBA) complaint against defendants The Richman Group Capital Corporation, TRG, Inc., and more than twenty affiliated businesses, namely: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); conversion (Count III); statutory theft, in violation of CONN. GEN. STAT. § 52-564 (Count IV); unjust enrichment (Count V); and violation of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 46-110a et seq. (Count VI). That same day, plaintiff also moved for reconsideration of the '850 March 2005 Ruling.  (Dkt. #193).  On August 11, 2005, Judge Arterton filed her Ruling on Motion for Reconsideration (Dkt. #241)["August

_____

[3]This complaint was redocketed in 3:03 CV 850 (JBA) on March 7, 2005 as Dkt. #183.

2005 Ruling"], in which she found that the allegations in the Second Amended Complaint "fall far short of the express written consent that this Court required" in the '850 March 2005 Ruling, so that Counts I, II, III, IV and VI were dismissed (at 5-11).  See also Lawrence v. The Richman Group Capital Corp., 2005 WL 1949864 (D. Conn. Aug. 11, 2005).

On April 29, 2005, defendants filed their Omnibus Motion for Dismissal and/or Summary Judgment as to Second Amended Complaint (Dkt. #203).  On September 6, 2005, defendant TRG filed its Motion to Dismiss Remaining Counts Based on Court's Rulings in Consolidated Action (Dkt. #243).  On December 15, 2005, Judge Arterton filed her Ruling on Defendants' Motion for Dismissal and/or Summary Judgment (Dkt. #255)["1st December 2005 Ruling"], in which she dismissed plaintiff's last count, Count V,  for unjust enrichment (at 2, 3-15), see also Lawrence v. The Richman Group Capital Corp., 2005 WL 3448056 (D. Conn. Dec. 15, 2005), and also her Ruling on Defendants' Motion to Dismiss and/or Summary Judgment (Dkt. #256)["2nd December 2005 Ruling"], in which she dismissed plaintiff's last counts, Counts I, II, VI, and VII, for breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and unjust enrichment (at 4-16), see also Lawrence v. The Richman Group of Connecticut, LLC, 2005 WL 3601383 (D. Conn. Dec. 12, 2005). On January 9, 2006, plaintiff filed his Notice of Appeal.  (Dkt. #260. See also Dkts. ##261 & 268).

On April 1, 2004, plaintiff commenced his third lawsuit, this one against defendant Wilder Richman Securities Corp. ["defendant Wilder Richman"], 3:04 CV 538 (JBA), in which he sought a declaratory judgment that his fee dispute with defendant Wilder Richman was not arbitrable before the NASD.[4]   That same day, plaintiff filed a Motion for Preliminary Injunction (3:04 CV 538, Dkt. #4) and on June 10, 2004, defendant Wilder Richman filed a

---

[4]See note 2 supra.

4

Motion to Dismiss (3:04 CV 538, Dkt. #26).  On March 7, 2005, Judge Arterton filed her Rulings on Plaintiff's Motion for Preliminary Injunction [and] Defendant's Motion to Dismiss (3:04 CV 538, Dkt. #55)["'538 March 2005 Ruling"], in which she denied plaintiff's motion and granted defendant's motion.  See also Lawrence v. Wilder Richman Securities Corp., 359 F. Supp. 2d 161 (D. Conn. 2005).

Defendants have filed Motions for Sanctions in these various lawsuits.  In the third lawsuit, 3:04 CV 538 (JBA), on July 30, 2004, defendant filed its Motion for Imposition of Rule 11 Sanctions (3:04 CV 538, Dkt. #37).  Two days after Judge Arterton filed her '538 March 2005 Ruling, on March 9, 2005, this Magistrate Judge filed a Ruling on Defendants' Motion for Sanctions (3:04 CV 538, Dkt. #56)["'538 March 2005 Sanctions Ruling"], which granted defendants' motion, based largely on the "harsh language" of the '538 March 2005 Ruling (at 5-6), in particular, Judge Arterton's finding that:

> [t]he harm Lawrence identifies is no more than the consequence of his own choice. Lawrence has consistently represented in each of the four actions . . . that he is aware of no claim that he has against Wilder Richman. . . .
>
> Lawrence is free to make a claim against Wilder Richman, or not, but being forced to choose and live with the repercussions cannot be characterized as irreparable harm.  Lawrence's position – that he first proceed with his suit against the other Richman entities in this Court, and arbitrate before the NASD only if "after full discovery and a trial on merits, the jury concludes that [Wilder Richman] is the only Richman Group entity which could be liable to Lawrence," . . . is untenable . . . .
>
> Moreover, as a general matter, the Second Circuit has squarely rejected the argument that the mandatory arbitration clause in Form U-4 [which Lawrence admits he executed,] unconstitutionally requires a plaintiff to forfeit his Fifth Amendment due process right, Seventh Amendment right to a jury trial, or his right to an Article III judicial forum, because there is no state action in the application or enforcement of the arbitration clause of Form U-4.
>
> Finally, the Federal Arbitration Act, which governs the NASD arbitration at issue here, requires arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.

('538 March 2005 Ruling, at 7-9)(multiple citations and internal quotations omitted)(emphasis added).   In response to plaintiff's Motion for Reconsideration, filed two weeks later (3:04 CV 538, Dkt. #60), on June 28, 2005, this Magistrate Judge filed the Ruling on Plaintiff's Motion for Reconsideration (3:04 CV 538, Dkt. #77)["June 2005 Sanctions Ruling"].   The June 2005 Sanctions Ruling granted the Motion for Reconsideration in part, so that sanctions were appropriate only to the extent that plaintiff sought injunctive relief in the action.  (At 6-8). On July 12, 2005, plaintiff filed an Objection to the '538 March 2005 Sanctions Ruling and June 2005 Sanctions Ruling, which is presently pending before Judge Arterton. (3:04 CV 538, Dkts. ##80-81, 84, 86, 88).[5]

On July 30, 2004, defendants also filed a Motion for Imposition of Rule 11 Sanctions in 3:03 CV 850 (JBA)(Dkt. #90).  Also on March 9, 2005, this Magistrate Judge filed a Ruling on Defendants' Motion for Sanctions (Dkt. #185)["'850 March 2005 Sanctions Ruling"], in which defendants' motion was denied without prejudice to renewal.  Regarding Count I, the '850 March 2005 Sanctions Ruling observed that

> a good faith basis does not exist for plaintiff to allege compliance with NASD Rule 3040 as such rule expressly requires written approval from Wilder Richman for plaintiff to enter into a contract with defendants and "[t]he allegations in Lawrence's complaint in this and in his related action preclude the existence of express written notice and consent from Wilder Richman."

(At 5, quoting '850 March 2005 Ruling at 19).   Judge Arterton continued:

> There is no way to read Lawrence's complaint, and the consistent position he has taken as to Wilder Richman in this and prior litigation, to allege that he represented Wilder Richman, through whom he was registered, in soliciting Bank Fund investors, and Lawrence's allegations preclude application of NASD Rule 3040.  The Court thus concludes that Lawrence has alleged an illegal contract, the performance of which is unenforceable. . . .  Count I of the

---

[5]The '538 March 2005 Sanctions Ruling instructed defendants to file an affidavit detailing the monetary sanctions sought as applicable to the pending motion (at 6-7).  These affidavits were filed by defense counsel on March 28, 2005.  (3:04 CV 538, Dkts. ##62-63).  Plaintiff is to file his opposition to these affidavits within twenty-one days of Judge Arterton's ruling on the pending objection.  (3:04 CV 537, Dkt. #79).

complaint, for breach of contract, is dismissed.

('850 March 2005 Ruling at 22).  As previously indicated, Judge Arterton, however, held that she would "reconsider this decision if plaintiff amends his complaint such that those allegations now precluding application of NASD Rule 3040 are modified," specifically, "plaintiff must have given detailed written notice of each proposed transaction expressly to Wilder Richman, and must have received express written consent from Wilder Richman." ('850 March 2005 Ruling at 23)(emphasis in original)(footnote omitted).

With respect to Counts II-IV and VI, Judge Arterton further held:  "Lawrence's bad faith, conversion, statutory theft, and CUTPA claims each depend on the existence of a valid contract, in the absence of which, Lawrence cannot imply good faith covenant, claim of ownership right to the commissions, or prove that the non-payment of commissions was unfair." (Id. at 24-25).  Therefore, such counts were also dismissed.  However, with respect to Count V, "[b]ecause an unjust enrichment claim may survive an invalid contract,"  Judge Arterton left this issue "for further record development."  (Id. at 30)(footnote omitted). Judge Arterton also observed that "There has been a significant amount of gamesmanship by both sides in their four related lawsuits. . . ."  (Id. at 23, n.11).

The '850 March 2005 Sanctions Ruling thus held:

> Based upon Judge Arterton's harsh language in the ['850 March 2005 Ruling], there well may be reason to impose Rule 11 sanctions here, particularly with respect to Count I.  However, Judge Arterton specifically left open the opportunity for plaintiff to seek leave to file an amended complaint (at 23), and did not dismiss Count V for unjust enrichment (at 29-30).  Rather than engage in further piecemeal distractions on this issue, the more prudent approach is to deny defendants' motion, without prejudice to renew, until such time as is clear which claims actually will remain in this lawsuit.
>
> Accordingly, defendants' Motion for Imposition of Rule 11 Sanctions is . . . denied without prejudice to renewal after further development of the remaining unjust enrichment claim in Count V and a possible amended complaint on Count I.

(At 7)(emphasis in original).

7

On December 20, 2005, defendants filed their Renewed Motion for Imposition of Rule 11 Sanctions (Dkt. #258), as to which plaintiff filed his brief in opposition on January 10, 2006 (Dkt. #259).[6]  With permission of the Court (Dkts. ##262-63), on January 30, 2006, defendants filed their reply brief (Dkt. #264).[7]  With permission of the Court (Dkts. ##265-66), on February 10, 2006, plaintiff filed his surreply brief (Dkt. #267).[8]

---

[6]The following twelve exhibits were attached: excerpts from the transcript of oral argument before Judge Arterton on February 22, 2005 (Exh. A); copy from the website, http://nasd.broaddaylight.com/nasd/dml_print.pl (Exh. B); copy of NASD Notice to Members 96-33, dated May 1996 (Exh. C); affidavit of John T. Christensen, sworn to on September 14, 2005, with resume attached (Exh. D); affidavit of Stuart L. Sindell, sworn to on September 15, 2005, with resume attached (Exh. E); copy of defendant Wilder Richman's Financial Statements and Supplementary Schedules for the Years Ended December 31, 1999, December 31, 2000, December 31, 2001, and December 31, 2002, and Independent Auditors' Reports (Exhs. F-I); copy of e-mail, dated June 14, 2004, from Steve Smith to David G. Davenport, with Responses to Financial Due Diligence Questions (Exh. J); copy of Bank Transfer Notice Form, dated January 3, 2004 (Exh. K); and copy of Wilder Richman's Balance Sheet, dated December 31, 2004 (Exh. L).

[7]Attached as Exh. A was the entire transcript from the February 22, 2005 oral argument before Judge Arterton.

[8]The following three exhibits were attached: copy of e-mail, dated January 20, 2003 (Exh. M); copy of Mediation Memorandum, dated August 21, 2003 (Exh. N); and copy of Wilder Richman's Annual Audited Report, for the period January 1, 2003 through December 31, 2003 (Exh. O).

Not surprisingly, on February 15, 2006, defendants filed a Motion to Strike Certain Portions of Plaintiff's Reply Brief and brief in support (Dkts. ##269-70).  Three exhibits were attached to the brief (Dkt. #270): copy of plaintiff's Case Referral Form, dated August 15, 2003, submitted to Mediation Consultants, LLC (Exh. A); copy of Case Referral Package from Mediation Consultants, LLC, sent by facsimile on August 5, 2003 (Exh. B); and copies of case law (Exh. C).  Twelve days later, on February 27, 2005, plaintiff filed his brief in opposition (Dkt. #272), to which a copy of a disclaimer, dated August 14, 2003, by defense counsel, was attached as Exh. A.

The issue of whether defendants ever offered to settle these lawsuits for $2,500,000 and whether the offer, if any, is admissible in the context of a motion for sanctions, was first raised in the parties' briefs regarding defendants' original Motion for Sanctions.  (See '850 March 2005 Sanctions Ruling at 3-4).

As the "Case Referral Instructions and Guidelines" for Mediation Consultants, LLC clearly state: "All statements made or documents submitted for a session are confidential and 'for settlement purposes' only." (Dkt. #270, Exh. B, at 3).  The circumstances in Longmoor v. Nilsen, 312 F. Supp. 3d 352, 363-64 (D. Conn. 2004), cited by plaintiff (Dkt. #270, at 2 & 2 n.1), are distinguishable from the facts here.

Accordingly, defendants' Motion to Strike Certain Portions of Plaintiff's Surreply Brief (Dkt. #269) is granted.

## I.  DISCUSSION

In their Renewed Motion (Dkt. #258), defendants argue that in each ruling issued by Judge Arterton subsequent to this Magistrate Judge's '850 March 2005 Sanctions Ruling, "Judge Arterton has . . . rejected every argument [p]laintiff has mustered to defend his contract-based claims, and, in the process, has further confirmed the baselessness of these claims." (At 2).   In particular, defendants point to Judge Arterton's rather pointed language in the August 2005 Ruling,  the 1st December 2005 Ruling, and the 2nd December 2005 Ruling.  (Id. at 4-7).

In his brief in opposition (Dkt. #259), plaintiff argues that: (1) he had a good faith basis to argue that his services for defendant did not violate Rule 3040 (at 10-12); (2) he had a good faith basis to allege compliance with Rule 3040 (at 12-21); (3) he had a good faith basis to argue that he never was transformed into a broker-dealer required to register under § 78o(a)(1) even if Rule 3040 was violated (at 21-24); (4) plaintiff had a good faith basis to argue that a violation of § 78o(a)(1) could not constitute the basis of a § 78cc(b) defense as a matter of law (at 24-26); (5) plaintiff had a good faith basis to argue that defendants did not have standing to assert a § 78cc(b) defense under the facts of this case (at 27-28); (6) he had a good faith basis to argue that any remedy available to defendants under § 78cc(b) was a question of fact to be determined at trial (at 28); (7) he had a good faith basis to argue that defendant TRG's § 78cc(b) defense was time-barred (at 28-29); (8) defendants' motion must be denied as noncompliant with the safe harbor provisions of Rule 11 (at 30-32); and (9) possible settlements and subsequent payments to plaintiff defeat defendants' motion as a matter of law (at 32-35).

In their reply brief, defendants argue that:(1) plaintiff's invented misunderstanding of the limited basis on which he was given leave to amend the complaint only underscores the frivolousness of the complaint (at 5-9); (2) plaintiff's joint and several liability contentions only

9

underscores that he had absolutely no basis for suing defendants and seeking to avoid arbitration with defendant Wilder Richman (at 9-11); (3) plaintiff's argument that he was not subject to the registration requirements of § 7809(a)(1) is specious (at 11-13); (4) plaintiff's so-called legal experts cannot save him (at 13-14); (5) defendants' Motion for Rule 11 Sanctions is timely (at 14-16); and (6) defendants' alleged offer of compromise is untrue and inadmissible (at 16-19).

In his surreply brief, plaintiff argues that: (1) plaintiff had a good faith basis to argue that he never has transformed into a broker-dealer required to register under § 78o(a) even if Rule 3040 was violated (at 2-3); (2) plaintiff's reliance on the advice of two expert witnesses, in and of itself, constitutes a good faith basis for his claims (at 3); and (3) defendants' settlement offers defeat defendants' motion as a matter of law (at 4-6).

As Judge Arterton and defendants have observed, plaintiff has taken inconsistent positions throughout the four lawsuits.  In 3:02 CV 1940 (JBA), while plaintiff acknowledged that he is an "associated person" of defendant Wilder Richman, he claimed that he had no claim against defendant Wilder Richman or defendant TRG, Inc., but only against defendant TRG.   In 3:03 CV 850 (JBA), plaintiff commenced his lawsuit against defendant TRG only on December 19, 2002, but on January 30, 2004, in 3:04 CV 166 (JBA), he filed his lawsuit against defendant TRG   Capital, defendant TRG, Inc. and more than twenty affiliated businesses.  Three months later, on April 1, 2004, in 3:04 CV 538 (JBA), plaintiff commenced his lawsuit against defendant Wilder Richman, in which he sought a declaratory judgment that his fee dispute with defendant Wilder Richman was not arbitrable before the NASD. Some five months later, on September 22, 2004, 3:03 CV 850 (JBA) and 3:04 CV 166 (JBA) were consolidated.

The disconnect in plaintiff's various claims was highlighted by Judge Arterton in her two rulings filed on March 7, 2005, namely the '850 March 2005 Ruling and the '538 March

10

2005 Ruling.  As Judge Arterton observed in the '850 March 2005 Ruling:

> While [plaintiff] acknowledges that he was a registered representative through Wilder Richman, not defendants, he contends that the services he provided to defendants were permitted by his registration with Wilder Richman but did not constitute a contract for compensation between Lawrence and Wilder Richman.   In effect, [plaintiff's] claim is that his registration with Wilder Richman allowed him to transact business on behalf of defendants, and that he provided services exclusively for defendants, not Wilder Richman. [Plaintiff's] position is inconsistent with federal securities law. Under this regulatory framework, [plaintiff] cannot have a valid contract exclusively with the unregistered defendants to act as their agent in soliciting investors for the TRG Funds.  For the arrangement [plaintiff] has alleged to be valid, he would need to have been acting in his capacity as an associated person of Wilder Richman, the only registered entity, in undertaking the transactions for which he now seeks compensation [Plaintiff], by his own allegations, has disclaimed such a possibility.

(At 14).  Plaintiff contends that he had "implied consent" from defendant Wilder Richman. (At

21, 23 & 23,  n.10).  After an exhaustive review of federal securities law and NASD 3040 (at

14-22), Judge Arterton concluded that plaintiff's

> position would render the registration requirement meaningless.  There is no way to read [plaintiff's] complaint, and the consistent position he has taken as to Wilder Richman in this and prior litigation, to allege that he represented Wilder Richman, through whom he was registered, in soliciting Bank Fund investors, and [plaintiff's] allegations preclude application of NASD Rule 3040. The Court thus concludes that [plaintiff] has alleged an illegal contract, the performance of which is unenforceable under 15 U.S.C. § 78cc(b).  Count I of the complaint, for breach of contract, is dismissed.

(At 22).  Because plaintiff's counsel, at oral argument, offered to amend plaintiff's complaint

to allege compliance with NASD Rule 3040,[9] Judge Arterton permitted such amendment, and

---

[9]At oral argument, Judge Arterton had inquired whether there was a written request for every transaction and written authorization from Wilder Richman for every transaction on which plaintiff claims a commission.  Plaintiff's counsel responded:

> I believe from the limited evidence we've been able to get from the defendants so far, from the evidence we've been able to get from the third parties, from the documents we do have, . . . upon information and belief I will plead that we satisfy all the requirements of Rule 3040 that apply.

> If that's all this Court needs, that additional sentence, I will plead it.  I don't believe I have the obligation to do so, . . . [but] if that's what makes a difference today, I can represent to the Court that I will add that allegation to the complaint.  I

indicated that she would

> reconsider this decision if plaintiff amends his complaint such that those allegations now precluding application of NASD Rule 3040 are modified, and plaintiff['s] amended allegations are in accordance with the above construction of NASD Rule 3040.  That is, to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction <u>expressly</u> to Wilder Richman, and must have received express written consent from Wilder Richman.

(At 23)(emphasis in original)(footnote omitted).[10]  As previously indicated, four of plaintiff's counts, for good faith  and fair dealing, conversion, statutory theft, and CUTPA (Counts II, III, IV and VI), were dismissed because they relied upon plaintiff's underlying claim for breach of contract.  (At 23- 28).  And as previously indicated, Judge Arterton found plaintiff's last count for unjust enrichment (Count V) may "survive an invalid contract," and "left" "this issue . . . for further record development." (At 29-30)(footnote omitted).  In a footnote, Judge Arterton permitted plaintiff every benefit of the doubt in his various theories against defendants:

> Defendants argue broadly that plaintiff's entire complaint should be dismissed because he previously represented that he had no claims against any Richman entity other than [defendant TRG](the subject of [3:03 CV 850]), and that he could not make such a claim against the other Richman entities, because each Richman Group had a separate and distinct corporate structure.  The Court disagrees that arguments made by counsel and

---

don't think I'm obligated, but I will.

(Dkt. #264, Exh. A, at 48-49.  <u>See also id.</u> at 49-50).  Earlier, plaintiff's counsel represented: "Do I believe I can prove it?  Yes, I do.  I have the evidence to prove it.  I believe it, yes."  (<u>Id.</u> at 48).

At a later point in the oral argument,"so [that] we have no misunderstanding," Judge Arterton sought reassurance from plaintiff's counsel that plaintiff was going to amend his complaint to allege that plaintiff provided written notice to defendant Wilder Richman, describing in detail the proposed transaction and his proposed role therein, to which plaintiff's counsel responded,"We will plead that." (<u>Id.</u> at 71-72).  Judge Arterton then reminded counsel that "all that's going to be subject to Rule 11. . . ." (<u>Id.</u> at 73).

[10]In a footnote, Judge Arterton bemoaned the "significant amount of gamesmanship by both sides in their four related lawsuits, primarily in their efforts to avoid or require arbitration." (At 23, n.11).

representations of [plaintiff] in prior litigation preclude his recovery against defendant in this action. [Plaintiff's] central claims in each of his lawsuits are based on alleged oral and written communications between him and Stephen B. Smith, and [plaintiff] is free to expand or amend his claims to reflect new information about the entities on behalf of which Smith was acting.

(At 30, n.19).

Shortly thereafter, on March 21, 2005, plaintiff filed his Second Amended Complaint (Dkt. #191), in which he alleged that "[u]pon information and belief," plaintiff provided defendant Wilder Richman with "written notice describing in detail the proposed transaction and [plaintiff's] proposed role therein," "written notice that [plaintiff] received or may receive compensation in connection with the transaction," and defendant Wilder Richman "advised [plaintiff] in writing that [defendant Wilder Richman] approved [plaintiff's] activities as aforesaid." (¶¶ 95-97). In the August 2005 Ruling, Judge Arterton ruled that these revised paragraphs "fall far short of the express written consent that this Court required when giving plaintiff leave to amend his complaint, particularly when viewed in light of the procedural history of this case." (At 5-6). Judge Arterton continued, in strong language:

> [Plaintiff] nowhere alleges express written notice to and consent from [defendant] Wilder Richman itself for each transaction in which he engaged; such information would necessarily be within his possession and had it existed [plaintiff] could have so pled. The issue now is not whether these allegations would satisfy Rule 8 had they been made on a clean slate. Against the backdrop of the procedural history of this case and when viewed in conjunction with the other allegations in plaintiff's Second Amended complaint, the Court cannot at this stage find that the broad allegations provide a sufficient basis to reconsider the ['850 March 2005 Ruling].

(At 6-7)(emphasis in original). Judge Arterton further observed that plaintiff's allegations were "at odds with themselves," in that he "simultaneously asserted that the transactions at issue are 'private securities transactions' within the meaning of NASD Rule 3040," and that they "took place within the scope and in the regular course of [plaintiff's] employment with [defendant] Wilder Richman, such that they could not be private securities transactions." (Id. at 8)(emphasis in original).

13

Judge Arterton further found that plaintiff "appears to have misunderstood" the '850 March 2005 Ruling, in that his brief "goes on to restate arguments already presented to and rejected by this Court, as they necessarily rest on a theory of implied, not express consent" from defendant Wilder Richman.  (At 8-9).  Judge Arterton continued, in harsh language:

> This Court's ['850 March 2005 Ruling] could not have been clearer – "to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction <u>expressly</u> to [defendant] Wilder Richman, and must have received express written consent from [defendant] Wilder Richman." Ruling at 23.  Express written consent means correspondence expressly giving notice about and granting consent to a particular action, addressed to or from [defendant] <u>Wilder Richman</u>, and correspondence with an agent acting on behalf of [defendant] Wilder Richman would suffice only if that agent expressly stated in writing that he was acting on [defendant] Wilder Richman's behalf for this purpose.  As this Court made clear in its prior ruling, the mere fact that [plaintiff] had repeated dealings with Smith would not suffice under NASD Rule 3040.  As the Court further noted in its prior ruling, "[t]o the extent the communications regarding the transaction took place as part of the regular course of one's employment with a member firm, the transaction would not be a 'private securities transaction' within the meaning of Rule 3040 (though such a transaction could be legal, with the contract subject to arbitration)."  Ruling at 22.
>
> At this state of these proceedings, the Court cannot countenance further gamesmanship in the effort to avoid arbitration.  Indeed, despite [plaintiff's] allegation that he engaged in "private securities transactions," what his specific allegations support is not a private securities transaction at all, but rather a contractual relationship in which [plaintiff] acted on behalf of [defendant] Wilder Richman, and communicated with Smith as part of the regular course of his employment – which is precisely what defendants have long claimed and what this Court specifically queried counsel about at oral argument.

(At 9-10)(emphasis in original).  As previously indicated, Judge Arterton declined to modify the '850 March 2005 Ruling and dismissed Counts I, II, III, IV and VI of the Second Amended Complaint.  (At 11).

Additionally, in the 1st December 2005 Ruling, Judge Arterton dismissed the remaining count, Count V, for unjust enrichment, from the Second Amended Complaint. Before reaching the legal issues regarding unjust enrichment (at 4-14), Judge Arterton observed that "[m]uch of plaintiff's briefing on this motion amounts to a second motion for

14

reconsideration of the Court's rulings concerning the validity of the alleged contract and will not be again considered here[ ]" (at 3), and that the "Court has twice already rejected plaintiff's arguments." (At 3, n.3).  In the 2nd December 2005 Ruling, based largely upon the conclusions reached in her multiple previous rulings, Judge Arterton dismissed plaintiff's Counts I and II for breach of contract and breach of implied covenant of good faith and fair dealing, from the original 3:03 CV 850 complaint against defendant TRG (at 4-11), Count VI for negligent misrepresentation (at 11-13), and Count VII for unjust enrichment (at 14-15).

Defendant's original Motion for Sanctions (Dkt. #90) was directed to the contract-based allegations in 3:03 CV 850 and 3:04 CV 166.  As previously stated, the '850 March 2005 Sanctions Ruling held:

> Based upon Judge Arterton's harsh language in the March 7th Ruling, there well may be reason to impose Rule 11 sanctions here, particularly with respect to Count I. However, Judge Arterton specifically left open the opportunity for plaintiff to seek leave to file an amended complaint (at 23), and did not dismiss Count V for unjust enrichment (at 29-30).  Rather than engage in further piecemeal distractions on this issue, the more prudent approach is to deny defendants' motion, <u>without prejudice to renew</u>, until such time as is clear which claims actually will remain in this lawsuit.
>
> Accordingly, defendants' Motion for Imposition of Rule 11 Sanctions is (Dkt. #90) <u>denied without prejudice to renewal</u> after further development of the remaining unjust enrichment claim in Count V and a possible amended complaint on Count I.

(At 7)(emphasis in original).

Federal Rule of Civil Procedure 11(b) requires that any representations made to the court

> (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1) it is not being presented for an improper purpose . . .;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

It is a close question whether sanctions are appropriate prior to the February 22, 2005 oral argument before Judge Arterton, when she questioned plaintiff's counsel several times, "so [that] we have no misunderstanding," about his ability to plead complete compliance with NASD Rule 3040, in view of Rule 11 ramifications, to which he responded in the affirmative. (Dkt. #264, Exh. A, at 71-73). The landscape clearly shifted for plaintiff as of March 7, 2005, when Judge Arterton filed her strongly worded ruling, in which she dismissed all of plaintiff's counts except for Count V, but indicated that she would

reconsider this decision if plaintiff amends his complaint such that those allegations now precluding application of NASD Rule 3040 are modified, and plaintiff['s] amended allegations are in accordance with the above construction of NASD Rule 3040. That is, to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction expressly to Wilder Richman, and must have received express written consent from Wilder Richman.

('850 March 2005 Ruling at 23)(emphasis in original)(footnote omitted).  In a footnote, Judge Arterton permitted plaintiff every benefit of the doubt in his various theories against defendants:

Defendants argue broadly that plaintiff's entire complaint should be dismissed because he previously represented that he had no claims against any Richman entity other than [defendant TRG](the subject of [3:03 CV 850]), and that he could not make such a claim against the other Richman entities, because each Richman Group had a separate and distinct corporate structure.  The Court disagrees that arguments made by counsel and representations of [plaintiff] in prior litigation preclude his recovery against defendant in this action. [Plaintiff's] central claims in each of his lawsuits are based on alleged oral and written communications between him and Stephen

16

> B. Smith, and [plaintiff] is free to expand or amend his claims to reflect new
> information about the entities on behalf of which Smith was acting.

('850 March 2005 Ruling at 30, n.19).

As previously indicated, plaintiff promptly filed his Second Amended Complaint (Dkt. #191), but instead of relying upon express written notice, which plaintiff's counsel claimed he had, his allegations were based "[u]pon information and belief." (¶¶ 95-97). In the August 2005 Ruling, Judge Arterton ruled that these revised paragraphs "fall far short of the express written consent that this Court required when giving plaintiff leave to amend his complaint, particularly when viewed in light of the procedural history of this case."  (At 5-6). Judge Arterton further observed that plaintiff's allegations were "at odds with themselves," and that plaintiff "appears to have misunderstood" the '850 March 2005 Ruling, in that his brief "goes on to restate arguments already presented to and rejected by this Court, as they necessarily rest on a theory of implied, not express consent" from defendant Wilder Richman.  (At 8-9). Judge Arterton continued, in harsh language, that the '850 March 2005 Ruling "could not have been clearer," that the "Court specifically queried counsel" about these issues at oral argument, and that  "[a]t this state of these proceedings, the Court cannot countenance further gamesmanship in the effort to avoid arbitration." (At 9-10).

Under these circumstances, it is appropriate to impose sanctions for the time expended by defense counsel with respect to all contract-based counts subsequent to '850 March 2005 Ruling, issued on March 7, 2005.[11]  As in the '538 March 2005 Sanctions Ruling,

---

[11]Plaintiff's timeliness argument has no merit.  As previously discussed, the '850 March 2005 Sanctions Ruling denied defendants' original Motion for Sanctions "without prejudice to renewal after further development of the remaining unjust enrichment claim in Count V and a possible amended complaint on Count I," in that "[r]ather than engage in further piecemeal distractions on this issue, the more prudent approach is to deny defendants' motion, without prejudice to renew, until such time as is clear which claims actually will remain in this lawsuit."  (At 7)(emphasis in original).

On December 15, 2005, in her 1st December 2005 Ruling and 2nd December 2005 Ruling, Judge Arterton dismissed the remaining counts in 3:03 CV 850 (JBA).  Five days later, on

the Magistrate Judge leaves open for later determination against whom the sanctions are to be imposed.  Defendants shall file an affidavit detailing the monetary sanctions sought, to the extent set forth above, **on or before April 21, 2006**.  Plaintiff may file a brief in opposition **on or before May 19, 2006**, and defendants may file a reply brief **on or before June 2, 2006**.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 10th day of March, 2006.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

December 20, 2005, defendants filed their pending Renewed Motion for Imposition of Rule 11 Sanctions.