UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

John F. Lawrence,                :
        Plaintiff,               :
                                 :
v.                               :      Case No. 3:03cv850 (JBA)
                                 :
The Richman Group of             :
Connecticut, LLC, et al.,        :
        Defendants.              :

**RULING ON PLAINTIFF'S OBJECTIONS TO SANCTIONS RULING [DOC. # 274]
CONCERNING DEFENDANTS' RENEWED MOTION FOR SANCTIONS [DOC. # 258];
RULING ON DEFENDANTS' MOTIONS TO STRIKE [DOCS. ## 269, 285]**

This action arises out of an exclusivity agreement between
plaintiff Lawrence and defendants, which agreement plaintiff
alleged defendants breached when they used other representatives
to market certain investment funds, depriving him of commissions
to which he claimed he was entitled.  Familiarity with the
Court's earlier rulings in this consolidated action, containing
detailed descriptions of the facts and circumstances underlying
this dispute, is presumed.

On March 4, 2005, this Court granted defendants' Motion to
Dismiss Counts I, II, III, IV, and VI of plaintiff's Amended
Complaint, concluding that plaintiff had alleged an illegal
contract with defendants.  Plaintiff's counsel insisted at oral
argument, however, that notwithstanding the plaintiff's
allegations in his complaints in two related actions, plaintiff
had received express written consent from Wilder Richman
Securities Corporation ("WRSC") (an entity affiliated with

1

defendants but not a party to this action) to engage in private securities transactions, which would render the contracts with defendants legal under NASD Rule 3040.  Based on these representations, the Court permitted plaintiff leave to file a Second Amended Complaint, and stated that it would reconsider its dismissal decision if "plaintiff amends his complaint such that those allegations now precluding application of NASD Rule 3040 are modified, and plaintiffs' amended allegations are in accordance with the [Court's] construction of NASD Rule 3040. That is, to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction expressly to [WRSC], and must have received express written consent from [WRSC]." March 4, 2005 Ruling [Doc. # 182] at 23.

On March 21, 2005, plaintiff filed a Second Amended Complaint purporting to comply with the Court's requirements, and moved for reconsideration of the Court's March 4 ruling on the basis of the Second Amended Complaint and arguing that defendants lacked standing to raise an illegal contract defense.  The Court found "no merit" in plaintiff's lack of standing argument and also found that "[t]he allegations in the Second Amended Complaint [fell] far short of the express written consent that this Court required when giving plaintiff leave to amend his complaint, particularly when viewed in light of the procedural history of this case."  August 11, 2005 Ruling [Doc. # 241] at 5-

6.  The Court found that, notwithstanding its specific
instructions both at oral argument and in its March 2005 ruling,
plaintiff "nowhere allege[d] express written notice to and
consent from [WRSC] itself for each transaction in which he
engaged; such information would necessarily be within his
possession and had it existed Lawrence could have so pled." Id.
at 6.  The Court thus found, particularly "[a]gainst the backdrop
of the procedural history of this case," plaintiff's "broad
allegations" did not provide a sufficient basis to reconsider its
March 2004 decision. Id. 6-7.  The Court generously
characterized plaintiff's non-compliance with its pleading
instruction as a "misunderstanding," but noted that plaintiff's
memorandum "restate[d] arguments already presented to and
rejected by this Court, as they necessarily rest on a theory of
implied, not express, consent from WRSC." Id. at 8-9.

    Before issuance of any of the above-described rulings, in
July 2004 defendants filed a motion for sanctions pursuant to
Fed. R. Civ. P. 11 directed at plaintiff's Amended Complaint,
contending, inter alia, that plaintiff knew or should have known
"that the alleged contract that forms the basis of his [claims]
was illegal and unenforceable under any theory." First Mot. for
Sanctions [Doc. # 90] at 2.  The motion was referred to
Magistrate Judge Joan Glazer Margolis, who denied it without
prejudice to renew, noting "[r]ather than engage in further

3

piecemeal distractions on this issue, the more prudent approach is to deny defendants' motion, without prejudice to renew, until such time as is clear which claims actually will remain in this lawsuit.  Accordingly defendants' Motion for Imposition of Rule 11 Sanctions is . . . denied without prejudice to renewal after further development of the remaining unjust enrichment claim in Count V and a possible amended complaint on Count I."  March 9, 2005 Sanctions Ruling [Doc. # 185] at 7.

Thus, following this Court's August 2005 ruling, as well as its ruling in December 2005 dismissing the last of plaintiff's claims in this action, defendants renewed their motion for sanctions, reiterating the claim from their first sanctions motion that "[p]laintiff and his counsel knew or should have known that the alleged contract that formed the basis of [p]laintiff's claims . . . was illegal and unenforceable under any theory" and noting that "Judge Arterton has now rejected every argument [p]laintiff has mustered to defend his contract-based claims, and, in the process, has further confirmed the baselessness of these claims."  See Renewed Sanctions Mot. [Doc. # 258] at 2.  Magistrate Judge Margolis granted defendants' renewed sanctions motion "with respect to all contract-based counts subsequent to '850 March 2005 Ruling, issued on March 7, 2005," March 13, 2006 Sanctions Ruling [Doc. # 273] at 17, and plaintiff filed the instant objections to her ruling, see Pl.

4

Obj. [Doc. # 274], which defendants have opposed, see Def. Opp.
[Doc. # 281].  Defendants have also filed motions to strike
certain portions of plaintiff's legal memoranda and mediation
documentation submitted therewith.  See Mots. to Strike [Doc. #
269, 285].  For the reasons that follow, plaintiff's objections
are overruled and the Magistrate Judge's ruling is approved and
adopted as modified herein.  Defendants' motions to strike are
granted.

## I.    Standard of Review

Notwithstanding plaintiff's contention that the more
stringent de novo standard of review is applicable to Magistrate
Judge Margolis's Reconsideration Ruling, the Second Circuit has
rejected this higher standard of review in the context of a
ruling imposing sanctions under Fed. R. Civ. P. 37.  See Thomas
E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990)
(utilizing clearly erroneous standard).  Other courts have
followed the reasoning of Thomas E. Hoar in applying the more
lenient "clearly erroneous or contrary to law" standard in the
context of Rule 11 sanctions.  See, e.g., Weeks Stevedoring Co.
v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 303-04 (S.D.N.Y.
1997) ("[T]he imposition of sanctions is reviewable under the
'clearly erroneous or contrary to law' standard unless the
sanction itself can be considered dispositive of a claim.");
Laser Med. Research Found. v. Aeroflot Soviet Airlines, 93civ5747

5

(PKL), 1994 WL 584665, at *2 (S.D.N.Y. Oct. 24, 1994) ("As to non-dispositive matters, a district court shall reverse a magistrate judge's findings only if they are 'clearly erroneous or contrary to law.' . . . Ordering a sanction in the amount of attorney's fees is considered non-dispositive since it does not resolve the substantive claims of relief alleged in the pleading.").  See also 28 U.S.C. § 636 (clearly erroneous or contrary to law standard applicable to magistrate rulings on non-dispositive motions); Conn. Mag. L. Civ. R. 72.2(b) (same).[1]

## II.  Rule 11 Standard

Fed. R. Civ. P. 11(b) provides that "by presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ––"

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification,

---

[1] Plaintiff contends that "[i]n the Rule 11 context, the majority of circuit courts that have addressed the issue have concluded that the nature of a Rule 11 motion requires a de novo review of a magistrate judge's ruling, a ruling which can be issued as a recommended ruling only."  Pl. Obj. at 10.  This assertion is misleading in light of the Second Circuit's rejection of this standard in the Rule 37 context and other district courts' reliance on that ruling in applying the more lenient "clearly erroneous or contrary to law" standard in the Rule 11 context.

> or reversal of existing law or the establishment of new
> law;
> (3) the allegations and other factual contentions have
> evidentiary support or, if specifically so identified,
> are likely to have evidentiary support after a
> reasonable opportunity for further investigation or
> discovery; and
> (4) the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(c) further provides that sanctions may be
imposed on attorneys, law firms, or parties, if it is determined
that Rule 11(b) has been violated.

"The standard for triggering the award of fees under Rule 11
is objective unreasonableness," Salovaara v. Eckert, 222 F.3d 19,
34 (2d Cir. 2000), such that "[a] distinction [is] drawn between
a position which is merely losing, and one which is both losing
and sanctionable," Sec. Indus. Ass'n v. Clarke, 898 F.2d 318, 321
(2d Cir. 1990).  Thus, "not all unsuccessful arguments are
frivolous or warrant sanction," and "to constitute a frivolous
legal position for purposes of Rule 11 sanction, it must be clear
under existing precedents that there is no chance of success and
no reasonable argument to extend, modify or reverse the law as it
stands."  See Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990).
Accordingly, "Rule 11 sanctions should be imposed with caution,"
Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994), and district
courts [must] resolve all doubts in favor of the signer," Rodick
v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993).

Additionally, evidence of settlement of an action, or of

7

settlement negotiations, can be considered, if relevant, to determine the objective reasonableness of a party's position. See <u>Nat'l Ass'n of Gov't Employees, Inc. v. Nat'l Fed'n of Fed. Employees</u>, 844 F.2d 216, 222 (5th Cir. 1988) (finding a "patent anomaly" in district court's imposition of sanctions where court had "thrice urged the defendants to pay something to settle [the case]"); <u>EMI Catalogue P'Ship v. CBS/Fox Co.</u>, 86civ1149, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996)(holding court may rely on evidence of settlement negotiations in evaluating whether action was objectively unreasonable for purposes of award of attorney fees under § 505 of the Copyright Act).  The relevance of the mediation documents submitted by plaintiff, and the merits of defendants' motion to strike those documents from the record, will be discussed below.

## III. Discussion

### A.   Defendants' Compliance With Rule 11's Notice Requirement

Plaintiff argues that the imposition of sanctions was improper because defendants did not comply with Rule 11(c)(1)'s requirement that the moving party provide the opposing party 21 days in which to withdraw "the challenged paper, claim, defense, contention, allegation, or denial."  Specifically, plaintiff argues that in light of the fact that defendants' initial sanctions motion was filed in July 2004 and therefore did not address issues identified by the Court's March and August 2005

rulings, and because defendants did not give supplemental notice to plaintiff after he filed his Second Amended Complaint in March 2005, defendants are not entitled to sanctions related to the substance of that Second Amended Complaint.

In response, defendants rely on Magistrate Judge Margolis's order that their motion was denied "until such time as is clear which claims actually will remain in this lawsuit," providing that defendants' motion could be renewed "after further development of the remaining unjust enrichment claim in Count V and a possible amended complaint on Count I."  March 9, 2005 Sanctions Ruling at 7.  Defendants contend that they followed the Magistrate Judge's instruction, and waited to renew their motion until after the Court dismissed the last of plaintiff's claims (the unjust enrichment claim) in December 2005.

Plaintiff contends that based on the Magistrate Judge's construction, defendants should have given him notice and filed their renewed motion after he filed his Second Amended Complaint in March 2005, but before the Court ruled on his reconsideration motion related to dismissal of his revised breach of contract claim in August 2005.  This position, however, is inconsistent with the logic of Magistrate Judge Margolis's opinion. Specifically, she directed defendants to wait to renew their motion until it was clear which claims (if any) would survive. Such clarity was provided by this Court's August and December

2005 rulings, not by plaintiff's filing his Second Amended Complaint.  Additionally, as detailed above, defendants articulated the same basis for sanctions in both their motions, i.e., that plaintiff had alleged an illegal and unenforceable contract.  In March 2005 the Court explicitly detailed the legal standard for plaintiff's NASD Rule 3040 argument, which if successful would have rendered the alleged contract legal, and gave the plaintiff opportunity to re-plead to conform with that standard.  Accordingly, Magistrate Judge Margolis denied defendants' first sanctions motion without prejudice.  However, plaintiff's Second Amended Complaint did not meet the legal requirements explicated by this Court and defendants renewed their sanctions motion.  Thus, at all times since the filing of defendants' first sanctions motion, plaintiff was on notice of defendants' belief that pressing his breach of contract claim was sanctionable on grounds that the contract pleaded was illegal and unenforceable.  Further, plaintiff cannot claim lack of notice of possible imposition of sanctions for filing a Second Amended Complaint, where on February 22, 2005, when the Court explained the standard applicable to plaintiff's contract-based claims, the Court also reminded his counsel, after granting leave to amend to comply with that standard, that "all that's going to be subject to Rule 11."  Oral Arg. Tr. [Doc. # 264, Ex. A] at 73.

Accordingly, plaintiff's objection that sanctions may not be

imposed due to lack of notice pursuant to Rule 11(c) is
overruled.

B.   Plaintiff's Compliance With Court's Pleading Instructions

Next, plaintiff argues that his conduct is not sanctionable,
engaging in lengthy briefing of arguments already raised before,
and rejected by, this Court at the February 2005 status
conference and in the Court's March and August 2005 rulings.
Plaintiff's contention that the Magistrate Judge failed to
analyze "the volume of cases issued by various federal courts . .
. which directly support the validity of, and certainly provide
(at a minimum) a good faith basis for, Lawrence's amended
complaint" Pl. Obj. at 2, is not well-taken where plaintiff's
arguments were already rejected by this Court, and precise
requirements given for re-pleading his breach of contract claim,
with which he did not comply. As plaintiff acknowledges, the
issue in determining sanctions is not whether dismissal of his
contract claim "was wrong," but rather whether he had a good
faith basis for maintaining those claims after the Court's March
2005 ruling.  As Magistrate Judge Margolis found, and as is
detailed below, the record shows that he did not.

Plaintiff admits that he "never has argued to this Court
that he did not understand the Court's February and March 2005
pleading instructions to include a requirement that Lawrence
plead express written communications exchanged with WRSC," but

11

plaintiff contends that he "believed [the facts pleaded in his
Second Amended Complaint] satisfied this Court's express written
notice and consent requirements."  Pl. Reply at 3.  Plaintiff
represents that "not until this Court's August 2005 dismissal of
the SAC did Lawrence or his counsel understand this Court's
reasoning that the absence of a WRSC letterhead on the
communications from Smith could, as a matter of law, excuse
defendants from all of their liability to Lawrence."  Id.
However, as this Court observed in its August 2005 ruling, the
March 2005 ruling "could not have been clearer:"

> [T]o satisfy Rule 3040, plaintiff must have given
> detailed written notice of each proposed transaction
> expressly to [WRSC], and must have received express
> written consent from [WRSC]. . . . Express written
> consent means correspondence expressly giving notice
> about and granting consent to a particular action,
> addressed to or from [WRSC], and correspondence with an
> agent acting on behalf of [WRSC] would suffice only if
> that agent expressly stated in writing that he was
> acting on [WRSC]'s behalf for this purpose.  As this
> Court made clear in its prior ruling, the mere fact
> that Lawrence had repeated dealings with Smith would
> not suffice under NASD Rule 3040.  As the Court further
> noted in its prior ruling, "[t]o the extent the
> communications regarding the transaction took place as
> part of the regular course of one's employment with a
> member firm, the transaction would not be a 'private
> securities transaction' within the meaning of Rule
> 3040. . . ."

August 11, 2005 Ruling at 9-10.

Indeed, at the February 2005 status conference, the Court
specifically instructed plaintiff's counsel regarding the
standard it interpreted Rule 3040 to require: "And that

compliance, so we have no misunderstanding, is [that] before Mr. Lawrence participated in any private securities transactions, and I'm now assured that the transactions at issue in this case are private securities transactions, an associated person, Mr. Lawrence, provided written notice to the member, [WRSC], describing in detail the proposed transaction and the persons's proposed role therein, and stated whether he received or may receive selling compensation in connection with the transaction, and then the other part that's the return business about [WRSC]'s written determinations."  Oral Arg. Tr. at 71-72.  Further, this Court inquired as to whether there was a written request by plaintiff, and corresponding written authorization from WRSC, for every transaction claimed, and plaintiff's counsel represented that he would plead it.  Id. at 48-50.  Likewise, in the Court's March 2005 Ruling, plaintiff was instructed that "to satisfy Rule 3040, plaintiff must have given detailed written notice of each proposed transaction expressly to [WRSC], and must have received express written consent from [WRSC]."  March 4, 2005 Ruling at 23.  However, as the Court found in its August 2005 Ruling, plaintiff failed to so plead, notwithstanding these explicit instructions from the Court – "[t]he allegations in the Second Amended Complaint [fell] far short of the express written consent that this Court required when giving plaintiff leave to amend his complaint . . . Lawrence nowhere alleges express written notice

13

to and consent from [WRSC] itself for each transaction in which he engaged; such information would necessarily be within his possession and had it existed Lawrence could have so pled." August 11, 2005 Ruling at 5-6.

While sanctions should only rarely be imposed, the Court finds that this is such a case where they are warranted as plaintiff and/or his counsel clearly and deliberately misrepresented what plaintiff would be pleading in a Second Amended Complaint if given leave to amend and then ignored the instructions of the Court, thereby interposing an obviously frivolous pleading. Because the sanctionable conduct is the assertion and maintenance of plaintiff's Second Amended Complaint following this Court's March 2005 ruling, where the claim, as pleaded, had already been found to lack any merit and thus was frivolous, the Court imposes sanctions to run from the filing of plaintiff's Second Amended Complaint on March 21, 2005, rather than from this Court's March 7, 2005 Ruling, and modifies the Magistrate Judge's ruling accordingly.

C.   Motion to Strike

Plaintiff argues that sanctions are inappropriate because defendants offered to settle this case, and because WRSC made a $655,000 payment to plaintiff. The $655,000 payment, made by a different entity from defendants here, and not made in an attempt to settle this case, is irrelevant. In relation to plaintiff's

14

claim regarding settlement offers in this case, defendants have
moved to strike the portions of plaintiff's memorandum advancing
this argument as well as the settlement documentation provided
therewith.

As noted above, offers of settlement may in some instances
be relevant to a sanctions assessment where it is indicative of
the objective reasonableness of a party's position.  In this
case, however, the alleged settlement offers were made
approximately two years before this Court's March 2005 ruling
specifically instructing plaintiff as to the pleading
requirements for asserting a NASD Rule 3040-based claim and
plaintiff's subsequent filing of his frivolous revised claims.
Thus, any settlement offers could not have been directed to the
Second Amended Complaint, which purported to state a different
claim than had previously been asserted, and cannot be probative
of the objective reasonableness of plaintiff advance those
claims.  Accordingly, such offers – if made  – are not probative
of the objective reasonableness of plaintiff advancing those
revised claims.

## IV.  Conclusion

For the foregoing reasons, plaintiff's Objections [Doc. #
274] to the Magistrate Judge's Ruling are OVERRULED and, as set
out above, defendants' Motion for Sanctions [Doc. # 258] is
GRANTED for the time expended by defense counsel with respect to

disposition of all contract-based counts in the Second Amended Complaint, running from the filing of that complaint on March 21, 2005.  Defendants' Motions to Strike [Doc. # 269, 285] are also GRANTED.  Defendants have already filed their fee affidavits and, pursuant to Magistrate Judge Margolis's order, plaintiff is given until **January 25, 2007** to file an opposition thereto, with a chambers copy to Magistrate Judge Margolis.  Defendants may file a reply by no later than **February 5, 2007.**

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 28th day of December, 2006.**

16