UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| John F. Lawrence<br>    *Plaintiff,*<br><br>    v.<br><br>The Richman Group of Connecticut, LLC, et al.,<br>    *Defendants.* | Civil No. 3:03cv850(JBA) |
| John F. Lawrence<br>    *Plaintiff,*<br><br>    v.<br><br>Wilder Richman Securities Corp.,<br>    *Defendant.* | Civil No. 3:04cv538(JBA)<br><br><br>September 3, 2009 |

RULING ON DEFENDANTS' MOTIONS FOR MONETARY SANCTIONS

Magistrate Judge Joan Glazer Margolis originally imposed sanctions pursuant to Federal Rule of Civil Procedure 11 in these two related actions in March 2005, yet the details of these sanctions still remain unresolved more than four years later. With Plaintiff John Lawrence out of the picture due to his intervening bankruptcy proceedings, two of his attorneys, Brian P. Daniels and Ruth Ann Azeredo, remain as the interested parties objecting to the sanctions.[1] In December 2006, the Court, over objection, affirmed Magistrate Judge Margolis's imposition of monetary sanctions, and left open only the question of *how much* the sanctions award should be. Magistrate Judge Margolis then resolved this question in a pair of rulings issued in November 2007 and, after significant reductions, awarded

---

[1] For simplicity, the Court will refer to the parties objecting to the sanctions—that is, Daniels, Azeredo, and, until recently, Lawrence—as "Plaintiff." The various defending parties in the two related actions, having the same interest with respect to sanctions, will be called "Defendants."

Defendants $291,931.24 in fees.

Thus, although the only matter remaining is the one Magistrate Judge Margolis expressly did not decide—how the sanctions award is to be allocated—Plaintiff now has objected to these sanctions awards much more broadly.  Specifically, Plaintiff argues that Magistrate Judge Margolis erred because (1) monetary sanctions are not necessary under these circumstances, (2) the fees sought by Defendants are excessive, and (3) the award should be reduced to reflect typical hourly rates for Connecticut attorneys.  As explained below, the Court approves and adopts Magistrate Judge Margolis's determinations, with modification, reflecting recently-decided Second Circuit precedent on higher out-of-district rates.  *Simmons v. New York City Transit Auth.*, No. 08-4079, 2009 WL 2357703 (2d Cir. Aug. 3, 2009).

I.      Background

The relevant background is as follows.

A.      The '850 Case

The earlier-filed of these two cases, *Lawrence v. Richman Group of Connecticut, LLC*, No. 3:03cv850, involved an exclusivity agreement between Lawrence and various investment entities.  In December 2006, the Court affirmed Magistrate Judge Margolis's finding that Plaintiff asserted claims that lacked a good-faith basis and warranted sanctions.  Overruling Plaintiff's objections to that ruling, this Court concluded:

> While sanctions should only rarely be imposed, the Court finds that this is such a case where they are warranted as plaintiff and/or his counsel clearly and deliberately misrepresented what plaintiff would be pleading in a Second Amended Complaint if given leave to amend and then ignored the instructions of the Court, thereby interposing an obviously frivolous pleading. Because the sanctionable conduct is the assertion and maintenance of plaintiff's Second Amended Complaint . . . , the Court imposes sanctions

2

to run from the filing of plaintiff's Second Amended Complaint on March 21, 2005.

*Lawrence v. Richman Group of Conn., LLC*, No. 03-850, 2006 WL 3841808, at *6 (D. Conn. Dec. 29, 2006).  The Court then directed the parties to submit briefs concerning the appropriate amount of monetary sanctions to Magistrate Judge Margolis, and the Court later denied Plaintiff's motion for reconsideration.  Based on their fee affidavits and supporting documentation, Defendants sought more than $250,000 in fees representing more than 700 hours of work by the attorneys based in Connecticut and in Florida in the '850 Case.

In her ruling awarding Defendants attorney's fees, Magistrate Judge Margolis first addressed Plaintiff's arguments that monetary sanctions were not necessary to achieve the purposes of Rule 11.  Confirming once again that monetary sanctions were warranted under the extreme circumstances of this litigation, she held: "The continuous actions of plaintiff's counsel here, especially in the face of Judge Arterton's specific and frequent cautionary language, are *precisely* the type of behavior for which monetary sanctions are appropriate." ('850 Ruling, Nov. 16, 2007 [Doc. # 319] at 6.)  Second, Magistrate Judge Margolis addressed Plaintiff's contention that the fees sought by Defendants were excessive.  On this point, Magistrate Judge Margolis found that Plaintiff's position had some merit, and she subtracted nearly $95,000 from the total amount sought by Defendants to properly align with the conduct this Court found to be sanctionable.  (*Id.* at 13.)

Finally, Magistrate Judge Margolis rejected Plaintiff's argument that the fees sought by Defendants' Florida-based attorneys, using hourly rates roughly a third higher than the attorneys based in Connecticut, should be reduced to reflect local market rates.  In her ruling, Magistrate Judge Margolis discussed at length the Second Circuit's opinion on the

3

application of the "forum rule" to fee awards, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *as amended on other grounds*, 522 F.3d 182 (2d Cir. 2008), and ultimately concluded that, given the parties' "scorched earth" tactics and the complex nature of the issues in the litigation, Defendants' engagement of out-of-state counsel was "reasonable under the circumstances." ('850 Ruling, Nov. 16, 2007, at 17–18.)  Magistrate Judge Margolis thus declined to reduce the fee award to reflect hourly rates typical in Connecticut, and she settled on a total award of attorney's fees in the amount of $157,958.  Noting that she preferred for Plaintiff and his counsel to determine how to allocate this award, she left open the question of whether to impose the sanction jointly and severally.

        B.     The '538 Case

The second ruling awarding attorney's fees proceeded similarly.  In this later-filed case, captioned *Lawrence v. Wilder Richman Securities Corp.*, No. 3:04cv538, Plaintiff sought injunctive and declaratory relief concerning arbitration proceedings before the National Association of Securities Dealers.  After this Court dismissed Plaintiff's claims, Magistrate Judge Margolis granted Defendants' motion for sanctions based on Plaintiff's frivolous assertion of irreparable harm, and the Court affirmed this finding after overruling Plaintiff's objections and also denying reconsideration.  In tandem with the sanctions process ordered in the related '850 case, the Court directed the parties to brief the amount of fees to be awarded before Magistrate Judge Margolis.  Defendants sought more than $130,000 in attorney's fees.

In her ruling awarding fees in this case, Magistrate Judge Margolis first confirmed that monetary sanctions were appropriate on these egregious facts for the same reasons

given in her companion ruling in the '850 case.  ('538 Ruling, Nov. 16, 2007 [Doc. # 119] at

6.)  Second, she examined the fee affidavits and supporting documentation and subtracted

some $20,000 from the Defendants' fee request.  (*Id.* at 8–10.)  Finally, she discussed *Arbor

Hill* and declined to reduce the requested award to reflect local Connecticut hourly rates.

Thus, Magistrate Judge Margolis awarded attorney's fees in the amount of $133,973.24, and

similarly declined to apportion this between the Plaintiff and his counsel.

II.      Standard

        Against this backdrop, two issues remain: (1) whether Magistrate Judge Margolis's

award of monetary sanctions in the amount of $291,931.24 was erroneous; and (2) how this

sanction should be allocated.

        By statute and by rule, the "clearly erroneous or contrary to law" standard applies to

a district court's review of a magistrate judge's determination of pretrial, non-dispositive

matters.  Fed. R. Civ. P. 72(a) (implementing 28 U.S.C. § 636(b)(1)(A)); D. Conn. Civ.

R. 72.2(b).  On the other hand, when a magistrate judge is designated to take evidence or

submit a recommended ruling on a dispositive motion, the district court "must determine

de novo any part of the magistrate judge's disposition that has been properly objected to."

Fed. R. Civ. P. 72(b) (implementing § 636(b)(1)(B)).

        In *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990), the

Second Circuit explained that imposition of monetary sanctions pursuant to Federal Rule

of Civil Procedure 37 is normally within a magistrate judge's discretion and subject to the

"clearly erroneous or contrary to law" standard of review by the district court.  Some courts

have extended this rationale and held that a magistrate judge's award of Rule 11 sanctions

is reviewed under that same more lenient standard.  *See, e.g.*, *Weeks Stevedoring Co. v.*

5

*Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303–04 (S.D.N.Y. 1997) (collecting cases and reasoning that "the imposition of sanctions is reviewable under the 'clearly erroneous or contrary to law' standard unless the sanction itself can be considered dispositive of a claim"). Other courts disagree.  For example, the Sixth Circuit unambiguously concluded that "motions for sanctions, fees and costs are *not* to be *determined* by a magistrate judge" because "such post-dismissal motions are not 'pretrial matters'" as contemplated by § 636(b)(1)(A) and because "resolution of such motions is 'dispositive of a claim.'" *Massey v. City of Ferndale*, 7 F.3d 506, 509–10 (6th Cir. 1993); *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) (emphasizing that "resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations *de novo*").

Whether a matter referred to a magistrate judge is dispositive or non-dispositive dictates which standard of review guides the district court, but this distinction is perhaps easier stated than applied.  A request for sanctions pursuant to Rule 11 is not typically characterized as a "pretrial" matter, yet it also does not seem all that similar to the dispositive matters (like motions for summary judgment) that are listed in § 636(b)(1)(A).  The Second Circuit, however, has cited *Massey* with approval—specifically, for the proposition that a bill of costs is "not a 'pretrial' matter," *LoSacco v. City of Middletown*, 71 F.3d 88, 91 (2d Cir. 1995)—and the other cases parting ways with *Weeks* and subjecting sanctions determinations to more stringent review are persuasive, *see Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994) ("The power to award sanctions, like the power to award damages, belongs in the hands of the district judge.").

Accordingly, although the starting point for the analysis here remains Magistrate Judge Margolis's determinations, the more correct—and, indeed, more cautious—approach is to review the two rulings to which Plaintiff objects under a *de novo* standard.

## III.   Discussion

### A.   Monetary Sanctions

Plaintiff first challenges the imposition of any monetary sanction at all.  According to Plaintiff, a monetary sanction is not necessary under these circumstances because Daniels and Azeredo, in effect, have already learned their lesson given all the time that has passed since monetary sanctions were ordered.  In addition, Plaintiff argues, the sanctions award should be negated by the Defendants' unclean hands during this drawn-out litigation. Magistrate Judge Margolis already discussed and rejected these arguments in her rulings awarding fees, however.  In each ruling, she reached the same conclusion with nearly identical language:

> Plaintiff is quite correct in his brief in opposition that absent "unusual circumstances," a court should not impose "drastic" and onerous penalties when lesser penalties equally serve the deterrent purposes of Rule 11. However, as defendant[s] set forth in painstaking detail, plaintiff presents this argument as if in a vacuum, as if the [earlier] decisions had never existed, and as if this Magistrate Judge and Judge Arterton had not already held that defense counsel is entitled to reimbursement . . . . The continuous actions of plaintiff's counsel here . . . constitutes "unusual circumstances," fortunately rarely seen in this district.  Therefore, as previously held by this Magistrate Judge and twice by Judge Arterton, monetary sanctions are appropriate here.

('850 Ruling at 6–8; '538 Ruling at 5–6 (citations omitted).)  Reviewing these determinations *de novo*, the Court concludes that they are entirely correct.

Magistrate Judge Margolis rightly determined that a monetary award was necessary to serve the purposes of Rule 11, and the passage of time has not shown counsel's actions to

be any less sanctionable. Plaintiff reiterates that no monetary sanction is necessary because Daniels and Azeredo have already been deterred from future misconduct by the looming threat of sanctions. But that only begs the question. Is this specific deterrence based on the Court's finding that counsel engaged in sanctionable conduct? Or have counsel been deterred by the imminent yet undetermined imposition of financial penalties? The exact nature of this deterrent effect need not be resolved, however, because this Court and the magistrate judge have both already found the course of conduct here to warrant monetary sanctions. To conclude otherwise at this point would effectively reward Plaintiff for, as Defendants put it, fighting a war of attrition.

Finally, at oral argument, Plaintiff revisited the question of whether the contested allegations in the '850 case were in fact frivolous and thus sanctionable. Specifically, Daniels cited a colloquy with the Court on February 22, 2005 and represented that the pleading deficiencies were the result of being confused about what the Court was requiring. Referencing that earlier exchange, Daniels maintained: "We would have had absolutely no incentive whatsoever to file a second amended complaint alleging facts if we believed your Honor had said those facts are not going to be sufficient." (Oral Argument Tr. 56:2–6, June 16, 2009.)

The transcript from February 22, 2005, however, reveals no evidence of such confusion. At an earlier point in the oral argument held that date, the Court clarified with the parties—specifically, with Daniels and with Defendants' counsel Robert Turken—what factual allegations would be required in light of NASD Rule 3040:

> Mr. Turken:     . . . I just want to get something very clear regarding a couple
>                 of the comments that counsel made concerning the 3040
>                 issue and the Court's questions. The Court asked specific

<table>
<tr><td></td><td>questions as to whether there was a written request and a written consent.  Counsel responded to that by saying that he would add allegations.</td></tr>
<tr><td>The Court:</td><td>That there were.</td></tr>
<tr><td>Mr. Turken:</td><td>No, he said he would add allegations that Wilder Richman consented.  He did not say he would add allegations that there was a written request and a written consent.</td></tr>
<tr><td>The Court:</td><td>No, I read the rule to him and he said that he was going to add allegations that they provided written notice to the member in detail proposing the transaction and so forth and so on, right?</td></tr>
<tr><td>Mr. Daniels:</td><td>I said I would add allegations that would fully comply with 3040, and that's going to [en]compass that.</td></tr>
<tr><td>The Court:</td><td>I don't want you to hedge this.  I want to know if you are going to put in an allegation that he —</td></tr>
<tr><td>Mr. Daniels:</td><td>Yes, your Honor.  I mean, that's just a subset.</td></tr>
<tr><td>The Court:</td><td>— provided written notice.</td></tr>
<tr><td>Mr. Daniels:</td><td>We will do that, yes.  I was trying to, because I don't know if the next thing they're going to say is there is some other requirement.  We are going to allege compliance with 3040, but I did say I'm not accepting the burden of proof on it, and they still have to plead it, but I'm going to allege that, your Honor.</td></tr>
<tr><td>The Court:</td><td>And that compliance, so we have no misunderstanding, is before Mr. Lawrence participated in any private securities transactions . . . , an associated person, Mr. Lawrence, provided written notice to the member, Wilder Richman, describing in detail the proposed transaction and the person's proposed role therein, and stated whether he received or may receive selling compensation in connection with the transaction, and then the other part that's the return business about Wilder Richman's written determinations.</td></tr>
</table>

9

> Mr. Daniels:   Yes, your Honor.
>
> The Court:   You are going to plead that?
>
> Mr. Daniels:   We will plead that.

(Oral Argument Tr. 70:10–72:8, Feb. 22, 2005.)  The Court then confirmed that "all that's going to be subject to Rule 11." (*Id.* at 73:10–11.)  Magistrate Judge Margolis addressed this issue in her sanctions ruling in this case:

> As is clear from the transcripts before Judge Arterton and multiple rulings by Judge Arterton, [she] gave plaintiff's counsel ample opportunity to retreat from their misrepresentations to her and to follow her unequivocal directives, but they chose not to.  The arguments made in plaintiff's brief here still fail to acknowledge that they fell short of their obligations to the Court.

('850 Ruling at 8 n.11.)  The Court agrees.

For all these reasons, the Court concludes that Magistrate Judge Margolis correctly determined—once again—that an award of monetary sanctions is appropriate under these circumstances.

### B.   Amount of Sanctions

Plaintiff also objects that the sanctions award generally is excessive and is improperly based on the hourly rates charged by out-of-state attorneys.  In the two sanctions rulings, Magistrate Judge Margolis exhaustively examined Defendants' fee affidavits and supporting documentation to determine how much time should be included in the fee award, and she fairly calculated an award in accordance with time actually spent related to the matters found frivolous.  ('850 Ruling at 8–14; '538 Ruling at 7–13.)  In fact, she reduced the fee award by more than $115,000, finding that Plaintiff correctly identified a number of time entries on Defendants' counsel's billing records that reflected time spent on matters insufficiently

related to the sanctioned conduct.  Magistrate Judge Margolis also appropriately included in the award the time spent on the sanctions motions themselves—which, given the protracted nature of the sanctions motion practice that flowed from the sanctioned conduct, is entirely reasonable.  *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."); Fed. R. Civ. P. 11 advisory committee's note to 1993 Amendments (confirming that "the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion").  Comparing the work done by the two law firms representing Defendants, Magistrate Judge Margolis further found that the time records revealed minimal duplication of effort.  Although Plaintiff objects generally to the amount of the monetary sanction, there is no objection to the particulars of Magistrate Judge Margolis's arithmetic, and so the Court has no way of knowing which time entries—once it is determined that a fee award is appropriate—the Plaintiff challenges.  Nevertheless, having reviewed these determinations *de novo*, the Court finds no error.

Magistrate Judge Margolis also declined to reduce the fee award to account for the prevailing hourly rates for Connecticut attorneys.  Confronted with the same arguments that Plaintiff raises here, Magistrate Judge Margolis reasoned:

> The parties agree that the critical decision governing this issue is the Second Circuit's recent decision in *Arbor Hill* . . . .  In these slug fest lawsuits, where the earth was not only scorched but virtually ripped open, which had a nearly unprecedented number of discovery motions, of dispositive motions, of sanctions motions, and of reconsideration motions, defendant[s] adequately [have] demonstrated that it was reasonable under the circumstances to retain its general litigation counsel from Florida.  As talented as the attorneys at Cohen and Wolf are, given the factual and procedural complexity of these

related lawsuits, defendant[s] [were] entitled to bring in extra muscle, that is, a law firm that had a long-standing understanding of the intricacies of defendant[s'] business and also an ample supply of attorneys to grind out the necessary work. And unlike *Arbor Hill*, securities claims are hardly intrinsically local matters, but rather ones where the legal market may well be defined by practice area.

Moreover, in comparing the rates of the junior partners and associates in Florida with those in Connecticut, the Florida rates are approximately one-third higher, which is not a startling divergence. . . . Therefore, there will be no reduction in hourly rates, as requested by Plaintiff.

('850 Ruling at 15–18; '538 Ruling at 14–16 (citations and quotation marks omitted).)

While Plaintiff's objections to Magistrate Judge Margolis's determinations have been pending, however, the Second Circuit issued another decision clarifying the law governing awards of attorney's fees. In *Simmons v. New York City Transit Authority*, No. 08-4079, 2009 WL 2357703 (2d Cir. Aug. 3, 2009), the court summarized the earlier *Arbor Hill* decision:

In *Arbor Hill*, we undertook to simplify the complexities surrounding attorney's fees awards . . . [and] to further develop the parameters of the "forum rule," a methodology first developed by the Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984). According to the forum rule, courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Arbor Hill*, 493 F.3d at 119 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)); *see also Blum*, 465 U.S. at 895; *Polk* [*v. N.Y. State Dep't of Corr. Servs.*], 722 F.2d [23], 25 [(2d Cir. 1983)]. The court may apply an out-of-district rate (or some other rate, based on the aforementioned "case-specific variables") if, "in calculating the presumptively reasonable fee[,] . . . it is clear that a reasonable, paying client would have paid those higher rates." 493 F.3d at 119.

*Simmons*, 2009 WL 2357703, at *3. The issue on appeal in *Simmons* was whether the district court erred by awarding attorney's fees to the prevailing plaintiff based on the prevailing hourly rates for attorneys in the Southern District of New York (where plaintiff's attorneys had their offices) rather than based on the rates typical for attorneys located in the district

12

where the case was actually litigated, the Eastern District of New York. *Id.* at *1. The

*Simmons* panel clarified the proper application of the "forum rule" as follows:

> We now hold that, when faced with a request for an award of higher
> out-of-district rates, a district court must first apply a presumption in favor
> of application of the forum rule. In order to overcome that presumption, a
> litigant must persuasively establish that a reasonable client would have
> selected out-of-district counsel because doing so would likely (not just
> possibly) produce a substantially better net result. . . . The party seeking the
> award must make a particularized showing, not only that the selection of
> out-of-district counsel was predicated on experience-based, objective factors,
> but also of the likelihood that use of in-district counsel would produce a
> substantially inferior result. Unless these limitations are observed, the award
> of attorney's fees would not respect what we described in *Arbor Hill* as the
> "touchstone" of the doctrine, "that district courts should award fees just high
> enough 'to attract competent counsel.'" 493 F.3d at 121 (emphasis added).
> Among the ways an applicant may make such a showing is by establishing
> that local counsel possessing requisite experience were unwilling or unable
> to take the case, *Agent Orange*, 818 F.2d at 232, or by establishing, in a case
> requiring special expertise, that no in-district counsel possessed such
> expertise.

*Simmons*, 2009 WL 2357703, at *4. Mindful of these principles, the Second Circuit held that

the plaintiff "ha[d] not overcome the presumption in favor of the forum rule":

> Simmons presented no evidence to the district court or on appeal that, had
> she retained Eastern District counsel instead of Southern District counsel,
> she would have received a substantially inferior result to that provided by her
> selected counsel. Nor has she shown that Eastern District counsel were
> unable or unwilling to take her case; indeed, the district court itself noted
> that other "civil rights attorneys in the Eastern District" may have been able
> to competently prosecute Simmons' litigation.

*Id.* at *6.

Although *Arbor Hill* and *Simmons* both dealt with attorney's fees awards directly

rather than monetary sanctions taking the form of fees, those cases nevertheless guide the

Court in reviewing *de novo* Magistrate Judge Margolis's determinations. *Simmons* makes

clear that a litigant seeking an award of attorney's fees based on out-of-state rates must do more than just show that turning to out-of-state counsel was reasonable under the circumstances of the litigation. Specifically, the Defendants in this case—like the plaintiff in *Simmons*—"must overcome a presumption in favor of the forum rule, by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 2009 WL 2357703, at *1. Defendants, while offering a sound explanation for why they turned to their Florida-based counsel, have not made a particularized showing that the participation of out-of-state counsel was likely necessary in order to achieve a better result or any likelihood that continued use of attorneys from the well-respected firm of Cohen and Wolf, L.P, "would produce a substantially inferior result." *Id.* Indeed, the "extra muscle" supplied by Defendants' general litigation counsel may have been a factor in the "slug fest" which the Magistrate Judge lamented. Moreover, given the purposes of Rule 11, Defendants have also not shown that awarding them fees based on out-of-state rates is likely necessary in order to make them whole (or avoid a substantially inferior result) and to deter future sanctionable misconduct by Plaintiff's counsel. To use the Second Circuit's cautioning language in *Simmons*, Plaintiff "should not be required to pay for a limousine when a sedan could have done the job." 2009 WL 2357703, at *6.

Accordingly, although Magistrate Judge Margolis fairly applied the law of the Second Circuit as it existed at the time she issued the two sanctions rulings, the Court concludes that Plaintiff is entitled to the reductions it seeks in the way of reducing the fee award to reflect prevailing Connecticut hourly rates. The Court therefore reduces the award by $102,297.05, and awards Defendants sanctions in the amount of $189,634.19.

14

C.      Allocation

Finally, there is the matter of how to allocate this monetary sanction.  In the two sanctions rulings, Magistrate Judge Margolis expressed her reluctance to apportion the sanction, and she instead invited Lawrence, Daniels, and Azeredo to "reach their own arrangements as to payment" and to "file additional briefs on this limited issue" if necessary. But Plaintiff submitted nothing further on this allocation issue, and represented in briefing that "[t]he sanctioned parties are not asking the Court to allocate a monetary sanction, but to consider the ability of the two remaining parties to pay a sanction in determining that the originally determined amount of a joint and several monetary sanction is greater than necessary." (Pl.'s Supp. Br. at 3 n.3.)  Plaintiff's counsel clarified its position at oral argument as follows:

> We, as a firm decision, made a decision not to seek allocation between counsel and the plaintiff.  [W]e believe, as the local law firm, that we have the responsibility in the end . . . and there is no issue about whether the sanctions are going to be paid . . . .  [W]e thought it was unseemly and something we didn't want to get into to start discussing the relative conduct and roles of ourselves, our counsel, co-counsel and our client.

(Oral Argument Tr. 12:13–23.)

The documentary record relevant to this issue is in conflict.  Azeredo submitted a declaration in which she averred that, even though Lawrence paid her nearly $900,000 in fees over four years, her present net worth is "beyond negative $200,000." (Azeredo Decl. ¶¶ 10, 19.) The Defendants submitted materials from Lawrence's bankruptcy proceedings detailing the $2,000,000 in fees that Lawrence paid his attorneys over the course of this litigation, but Defendants also highlight the absence of any evidence of an agreement among Lawrence and his attorneys concerning how to allocate a monetary sanction.  Plaintiff thus seeks to gain

15

the benefit of this uncertainty, arguing that this, too, counsels against awarding so much in fees.

Having already determined both that a monetary sanction is appropriate and what the amount of that sanction should be, however, the only issue left undecided is whether that sanction is imposed jointly and severally or in some other manner.  Plaintiff has simply provided the Court with no meaningful guidance on how to resolve this issue.  Thus, the Court once again agrees with Magistrate Judge Margolis's determinations.  Lacking any basis for apportioning the award, the Court concludes that the monetary sanctions should be imposed jointly and severally on Daniels and Azeredo, the only remaining interested parties.

IV.     Conclusion

Accordingly, the Court, having reviewed Magistrate Judge Margolis's sanctions rulings *de novo*, hereby overrules Plaintiff's objections in part and approves and adopts her determinations in part.  The Court thus imposes monetary sanctions jointly and severally against attorneys Brian P. Daniels and Ruth Ann Azeredo in the amount of $189,634.19.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3d day of September, 2009.

16